

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

---

### NO. PD-0332-13

---

### RENE DANIEL VILLARREAL, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### ZAPATA COUNTY

---

**ALCALA, J., delivered the opinion for a unanimous Court.**

### O P I N I O N

This case addresses whether a defendant has suffered egregious harm from the erroneous omission of a jury instruction that would have required the jury to apply a presumption of reasonableness as to his belief that the use of deadly force was immediately necessary to protect himself. *See* TEX. PENAL CODE § 9.32(b). The State raises this question in its petition for discretionary review, in which it challenges the court of appeals's reversal of the murder conviction of Rene Daniel Villarreal, appellant, based on the conclusion that

he was egregiously harmed by the trial court's omission of such an instruction. *See Villarreal v. State*, 393 S.W.3d 867, 876 (Tex. App.—San Antonio 2012). We agree with the State's contention that the court of appeals erred by concluding that appellant was egregiously harmed based on the existence of theoretical harm and based on an incomplete review of the record and the arguments of counsel. We reverse the judgment of the court of appeals and remand for further proceedings.

## I. Background and Procedural History

In September 2010, appellant was arrested and charged with the murder of Christopher Martinez. *See* TEX. PENAL CODE § 19.02(b)(2). Appellant and Martinez were both guests at a party when a fight broke out between them, and appellant stabbed Martinez six times, causing his death. At appellant's murder trial, although there was some conflicting testimony as to the details of the stabbing, most witnesses testified that Martinez was unarmed and that appellant was the sole aggressor. The State also introduced into evidence appellant's out-of-court statements to police immediately following the stabbing, in which appellant asserted that Martinez had attempted to "cut" him with a sharp object, after which appellant disarmed Martinez and stabbed him once with the weapon. Because he did not testify at trial, appellant's out-of-court statements to police were the sole evidence giving rise to a justification defense.

At the close of evidence, the trial court *sua sponte* instructed the jury on the law of self-defense as it applies to a defendant's use of deadly force against another. *See* TEX.

PENAL CODE §§ 9.31, 9.32(a). Based on that law, the trial court instructed the jury that a person is justified in using deadly force when the actor reasonably believed that the force was immediately necessary to protect himself against another person's use or attempted use of unlawful deadly force. *See id.* § 9.32(a)(2)(A). The trial court, however, did not additionally instruct the jury on the provisions set forth in Texas Penal Code Section 9.32(b), which, under some circumstances, creates a presumption of reasonableness as to an actor's belief under Subsection (a). *See id.* § 9.32(b). Appellant did not object to the lack of a presumption-of-reasonableness instruction, nor did he request a separate instruction describing the provisions in Section 9.32(b). After the charge was submitted, the jury found appellant guilty of murder and sentenced him to ninety-nine years' imprisonment.

On direct appeal, appellant contended that the trial court committed reversible error by omitting a jury instruction on the statutory presumption of reasonableness, and the court of appeals agreed. *See Villarreal*, 393 S.W.3d at 873.[1] With respect to the matter of charge error, the court reasoned that the Texas Penal Code "requires that a presumption that favors the defendant be submitted to the jury if there is sufficient evidence of the facts that give rise to the presumption . . . unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact." *Id.* (citing TEX. PENAL CODE § 2.05(b)(1); *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011)). It further

---

[1] In addition to his claim that he had been egregiously harmed by an error in the charge, appellant also raised claims of ineffective assistance of counsel. In light of its holding that appellant had been egregiously harmed as a result of charge error, the court of appeals did not address appellant's ineffective-assistance claims.

reasoned that, "[w]hen a rule or statute *requires* an instruction under particular circumstances, that instruction is the 'law applicable to the case,'" and the trial court "shall instruct the jury" regarding what that rule requires. *Id.* (citing *Oursbourn v. State*, 259 S.W.3d 159, 180 (Tex. Crim. App. 2008)). Applying these principles to the present case, the court concluded that there was "some evidence to support each of the three prongs under section 9.32(b)," and, therefore, the trial court erred by omitting a presumption-of-reasonableness instruction. *Id.* at 874-75.

The court of appeals went on to conclude, under the test set forth in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g), that appellant had been egregiously harmed by the omission of the instruction. *See Villarreal*, 393 S.W.3d at 875-76. Based on its weighing of the relevant considerations under *Almanza*, the court determined that the jury charge as a whole, the state of the evidence, and the arguments of counsel all weighed in favor of a finding of egregious harm because the omission of the instruction "deprived [appellant] of the benefit of the presumption that he reasonably believed the use of deadly force was immediately necessary," and because the matter of the reasonableness of appellant's use of deadly force was a hotly contested issue at trial. *Id.* at 876 (concluding that the omission of the presumption instruction "impacted the jury's verdict and vitally affected Villarreal's sole defense").

In its petition for discretionary review, the State presented two grounds challenging both the appellate court's error analysis and its determination that appellant was egregiously

harmed. This Court granted the State's petition for discretionary review only as to the lower court's harm analysis.[2] Because we did not grant review of the lower court's error analysis, we assume without deciding that the court's conclusion with respect to that matter was correct, and we limit our analysis accordingly.

## II. Appellant Was Not Egregiously Harmed By Omission of Presumption-of-Reasonableness Instruction

In its brief on discretionary review, the State contends that the court of appeals erred in conducting its harm analysis by reviewing the record for hypothetical harm and by placing undue emphasis on certain evidence in the record—namely, appellant's recorded statements to investigators in which he asserted that he acted in self-defense—while failing to afford adequate weight to other evidence in the record that refuted appellant's justification defense. The State additionally contends that the court of appeals incorrectly determined that appellant's sole defense was a justification defense because the record indicates that he instead sought to develop an identity defense. Agreeing with the State's contentions in part, we conclude that, for three reasons, the record fails to indicate the existence of egregious harm as a result of the trial court's omission of a presumption-of-reasonableness instruction. First, even had the jury received a correct instruction on that law, the instruction would have permitted the jury to disregard the presumption of reasonableness based on its determination

---

[2]The State's second ground for review asks,

If the instructions were required to be given *sua sponte*, did the court of appeals err by not considering the arguments of counsel and record as a whole in conducting its *Almanza* harm analysis?

either that appellant had no reason to believe that Martinez was attempting to commit murder or that appellant was otherwise engaged in criminal activity at the time of the offense. Second, even had the jury received it, a presumption-of-reasonableness instruction would not likely have resulted in a different verdict because of the weakness of appellant's defensive evidence in comparison to other evidence in the record refuting that evidence. Third, although the trial court *sua sponte* included language instructing the jury on the law that governs a defendant's claim that his use of deadly force was justified in self-defense, the record indicates that trial counsel did not rely exclusively on that defense. After describing the applicable standard of review, we discuss each of these considerations below in the context of analyzing the applicable *Almanza* factors. *See Almanza,* 686 S.W.2d at 171.

**A. Standard of Review**

Based on the court of appeals's holding below, we assume the existence of charge error. We next determine whether that error requires reversal based on the test set forth in *Almanza*. *See id.* Under *Almanza*, the degree of harm required for reversal depends on whether the error was preserved in the trial court. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Almanza*, 686 S.W.2d at 171. Where, as here, the defendant did not raise a timely objection to the jury instructions, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *See Almanza*, 686 S.W.2d at 171; *see also Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Because appellant did not raise a

timely objection to the instructions, the court of appeals correctly determined that reversal here is proper only if the record indicates the existence of egregious harm. *See Almanza*, 686 S.W.2d at 171.

Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *See id.*; *see also Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). Egregious harm is a "high and difficult standard" to meet, and such a determination must be "borne out by the trial record." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (citations omitted). On appeal, neither party bears the burden of showing harm or a lack thereof under this standard. *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). We will not reverse a conviction unless the defendant has suffered "actual rather than theoretical harm." *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). In examining the record to determine whether charge error has resulted in egregious harm to a defendant, we consider (1) the entirety of the jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the trial record as a whole. *Almanza*, 686 S.W.2d at 171.

**B. Consideration of *Almanza* Factors**

**1. Entirety of the Jury Charge**

With respect to the entirety of the charge, we agree with the court of appeals's overall assessment that this factor weighs in favor of a finding of egregious harm. *See Villarreal*,

393 S.W.3d at 875 (explaining that jury charge, "considered as a whole, weighs in favor" of egregious harm because "[n]othing in the charge alerted the jury that it must presume [appellant] had a reasonable belief that the use of deadly force was necessary"). We, however, afford less weight to this factor than did the court of appeals because that court failed to consider that a complete jury charge on the presumption, in addition to describing the legal force of the presumption itself, would have also permitted the jury to conclude that the presumption was inapplicable based on the facts of this case. *See Almanza*, 686 S.W.2d at 171; TEX. PENAL CODE § 9.32(b).

In its instructions to the jury after the close of evidence, the trial court's charge initially gave an abstract charge on the elements of murder, and, in an application paragraph, applied those elements to the facts of the charged offense. The trial court additionally *sua sponte* included instructions detailing the law that applies to a defendant's claim that his use of deadly force was justified by self-defense. *See* TEX. PENAL CODE §§ 9.31(a), 9.32(a). With respect to the general law of self-defense, the instructions correctly informed the jury that a person "is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *See id.* § 9.31(a). Additionally, the instructions were correct in stating that, in the context of a defendant's use of deadly force, a person is justified in using such force "if the actor would be justified in using force against the other in the first place [under Penal Code 9.31] and when the actor reasonably believes that such

deadly force is immediately necessary to protect oneself against the other person's use or attempted use of unlawful deadly force." *See id.* § 9.32(a).[3] The instructions also stated,

> When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force by another, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury at the hands of such assailant, then the law excuses or justifies such a person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack.

The application paragraph instructed the jurors that they should acquit appellant of the offense of murder if they

> [found] from the evidence, or [had] a reasonable doubt thereof, that at the time the defendant was under attack or attempted attack from the victim [Martinez], and that the defendant reasonably believed, as viewed from his standpoint, that such deadly force as he used, if any, was immediately necessary to protect himself against such attack or attempted attack, and so believing, he stabbed the victim[.]

The court's charge thus generally instructed the jury on the law of self-defense under Penal Code Section 9.31, and it included an instruction on the law that applies to a defendant's use of deadly force pursuant to Section 9.32(a). *See* TEX. PENAL CODE §§ 9.31, 9.32(a). But the charge did not additionally ask the jury to decide whether, in light of the circumstances of the case, appellant was entitled to a presumption of reasonableness as to his asserted belief that the use of deadly force was immediately necessary. *See id.* § 9.32(b). Because the

---

[3]The instructions additionally specified that "the use of force against another is not justified in response to verbal provocation alone," and the instructions defined the term "reasonable belief" as one that would be held by an ordinary and prudent person in the same circumstances as the defendant. *See* TEX. PENAL CODE §§ 9.31(b)(1), 1.07(a)(42).

ground in this petition for discretionary review is limited to the appellate harm analysis, we assume that the trial court's instructions were erroneous by failing to give a presumption instruction as the law applicable to the case and, therefore, we agree with the court of appeals's overall determination that the charge failed to comprehensively and accurately detail the applicable law. *See Villarreal*, 393 S.W.3d at 875.[4]

On the other hand, we disagree with the lower court's assignment of substantial weight to this factor because its analysis failed to take into account that a complete instruction on the presumption of reasonableness would have also informed the jury that, under some circumstances, an actor is not entitled to the benefit of the presumption. *See* TEX. PENAL CODE § 9.32(b).[5] Had it been properly given to the jury, the omitted instruction

---

[4]The court of appeals further noted the absence of a no-duty-to-retreat instruction, but the court did not explain how that additional error in the instructions would contribute to a finding of egregious harm under the circumstances of this case. *See Villarreal v. State*, 393 S.W.3d 867, 875 (Tex. App.—San Antonio 2012).

[5]The statutory presumption applies only if the actor:

(1) knew or had reason to believe that the person against whom the deadly force was used:

(A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;

(B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or

(C) was committing or attempting to commit [aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery];

would have permitted the jury to disregard the presumption if it concluded, among other things, that appellant had no reason to believe that Martinez was attempting to commit murder or that appellant was otherwise engaged in criminal activity at the time of the stabbing. *See id.* According to the Texas Criminal Pattern Jury Charges, the correct instructions would have told the jury that it was required to apply the presumption

> unless [ ] the [S]tate has proved, beyond a reasonable doubt, at least one of the following:
>
> 1. The defendant neither knew nor had reason to believe that [the complainant]—
>
>     . . .
>
> c. was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery; or
>
> 2. The defendant provoked [the complainant]; or
>
> 3. The defendant, at the time the deadly force was used, was engaged in criminal activity other than a class C misdemeanor that is a violation of a law or ordinance regulating traffic.
>
> If [the jury finds] that the [S]tate has proved element 1, 2, or 3 listed above, the presumption does not apply and [the jury is] not required to find that the defendant's belief was reasonable.

TEXAS CRIMINAL PATTERN JURY CHARGES, DEFENSES 246-47 (2013).

A complete instruction, therefore, would have permitted the jury to decide that the

---

(2) did not provoke the person against whom the force was used; and

(3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

TEX. PENAL CODE § 9.32(b).

presumption did not apply to the facts of appellant's case based on the existence of certain circumstances, such as appellant's lack of knowledge that Martinez was attempting to commit murder or appellant's being engaged in criminal activity at the time of the offense. *See id.*; TEX. PENAL CODE § 9.32(b)(1)(C), (b)(3). Because the applicability of the presumption is dependent upon the evidence that was adduced at trial, we now consider that evidence and, as explained further below, we conclude that the omitted charge did not deprive appellant of a fair and impartial trial.

**2. State of the Evidence**

With respect to the state of the evidence, the court of appeals reasoned that, because self-defense was the "primary contested issue at trial," and because none of the witnesses at trial corroborated appellant's version of events, this factor weighs in favor of a finding of egregious harm. *Villarreal*, 393 S.W.3d at 875-76 ("Given the conflicting testimony regarding the circumstances surrounding the stabbing, [the state of the evidence] also weighs in favor of concluding Villarreal suffered egregious harm."). We disagree with that assessment because the mere existence of conflicting testimony surrounding a contested issue does not necessarily trigger a finding of egregious harm. *See Olivas v. State*, 202 S.W.3d 137, 148 (Tex. Crim. App. 2006) (suggesting that contested evidence may, but does not necessarily, give rise to finding of egregious harm). Furthermore, the court of appeals erred by failing to properly consider the plausibility of the evidence raising the defense. *See Allen*, 253 S.W.3d at 267-68 (observing, with respect to an egregious-harm analysis pertaining to

a defensive theory, that "it is appropriate to consider the plausibility of the evidence raising the defense" as at least one factor in deciding whether egregious harm exists). We explain our reasoning by examining (a) the witnesses' testimony, (b) appellant's out-of-court statements to police, (c) the lack of evidence indicating that the statutory presumption would have applied under the facts in the record, and (d) the relative weakness of the evidence indicating that appellant acted in self-defense.

## a. Witness Testimony Indicated That Appellant Stabbed Unarmed Martinez

The court of appeals erred by failing to consider the strength of the evidence showing that appellant was the aggressor and that Martinez was unarmed when appellant stabbed him. Broadly speaking, the State's evidence at trial indicated that, on the night of the party, appellant was under the influence of drugs and alcohol, was acting "crazy" and "angry," and was challenging others to fight. Prior to the stabbing, one witness, Gonzalo Garza, testified that appellant and another partygoer, Travis Sweet, were "throwing gang signs" indicating that they were members of the Texas Syndicate and saying, the "syndicate runs this house." Believing that appellant and Sweet "were disrespecting the household," Garza stated he tried to talk to them "to calm [them] down," after which appellant tried to hit Garza. Garza then hit appellant in the face or the chest. The hostess of the party, Mayra Garcilazo, told appellant to calm down, and, in order to prevent further fighting, she asked Garza to leave the house. Garza left.

Several witnesses testified as to what happened next. Appellant and Martinez were

standing inside near the pool table when they started arguing. Martinez "got mad and he took his shirt off." According to witness Dolores Oropeza, appellant responded by saying, "This guy thinks he's well-built or what?" Although testimony was inconsistent as to who initiated the physical altercation, witnesses reported that appellant and Martinez began hitting each other. Several witnesses testified that Martinez then walked outside the house and headed toward the front gate in an attempt to leave the party. Oropeza stated that, at that moment, appellant "went at [Martinez] with a knife," stabbing him "three or four times." Another witness, Mario Esquivel, reported that he was walking towards the front gate with Martinez when appellant came up and started stabbing Martinez "about four times," including in the chest "two or three times." According to Oropeza, Martinez was "trying to put his arms [up]" to defend himself against the knife. None of the witnesses suggested that Martinez was holding a knife at any time. Having been stabbed, Martinez ran outside the gate and collapsed near a police car that had arrived on the scene. Appellant ran towards the back of the house, where he was later found hiding in the brush by police officers. A knife recovered from the scene was later identified as belonging to Zaira Villarreal, who was also present at the party.[6] Although the testimony was somewhat inconsistent as to how the knife ultimately came into appellant's possession, the general version of events as told by the State's witnesses was that Zaira gave her knife to Travis Sweet, who gave the knife to appellant.

---

[6]Although the reporter's record refers to this individual as "Saida Villarreal," the parties assert that the correct spelling is in fact "Zaira," and that is also the spelling used by the court of appeals in its opinion. For conformity's sake, we also adopt the latter spelling here.

Zaira, however, disputed that she had given the knife to anyone that night and instead told investigators that she had left the knife in her purse.

The medical examiner, Dr. Corinne Stern, gave testimony that was consistent with the version of events as told by the State's witnesses. She reported that Martinez died as a result of multiple stab wounds, including one chest wound, one abdominal wound, and four arm wounds. The stab wounds Martinez sustained were consistent with having been inflicted by the recovered silver butterfly knife. Dr. Stern also viewed a photograph of the wound on appellant's hand, which appellant claimed to have been caused by the weapon when he tried to take it from Martinez. Stern opined that appellant's wound was "very irregular" and "jagged," and she concluded that the wound had not been caused by the smooth blade of the knife used in Martinez's stabbing. Her opinion was additionally supported by DNA analysis of the blood that was on the knife, which revealed that the knife contained Martinez's DNA and no one else's.

At the time that appellant was apprehended while hiding in a brushy area behind the house, one of the arresting officers, Officer Alvarez, reported that appellant was "shouting at the deputies," using "vulgar language," and telling the officers he "wasn't gonna move" and for them to "come and get him." Alvarez described appellant as "real aggressive" and "really angry," and he stated that officers had to "give [appellant] verbal commands to get down on the [ground] and he was not complying[.]"

**b. Appellant's Statements to Police Asserting Self-Defense**

Although it correctly noted that none of the witnesses at trial corroborated appellant's version of events, the court of appeals erred by failing to consider the relative weakness of the defensive evidence in light of the entire record. *See Villarreal*, 393 S.W.3d at 875-76. Appellant's statements to investigators, laced with profanity and full of bravado, were largely incoherent and implausible in providing various explanations for the stabbing of Martinez. In his statements to investigators on the night of the stabbing, appellant initially stated that he "[knew] very well that [he was] not the one that started the whole thing," and pointed to a wound on his hand indicating that Martinez "did this to [him]" and he was "going to fucking defend [himself]," otherwise he would be a "fucking pussy." Appellant explained that Martinez was "boasting" and was challenging "a lot of guys" to fight. According to appellant, Martinez "was acting as if he was all fucking that, like very well built." Appellant, apparently offended by Martinez's boasting, told Martinez that he was "no match" for appellant and that appellant would show Martinez that he "was not scared" of him. Appellant stated that Martinez "should not have act[ed] as if he was the man." The investigator asked whether "the fight was all about that, that the guy was boasting?" Appellant responded, "Yes, that he was, damn guy. Why are you acting like that if we are buddies, guy? Why do you think you are all that, guy?" Appellant indicated that at that point he "got close" to Martinez, Martinez attempted to cut him, and appellant then took the sharp object away from Martinez and stabbed him once. Specifically, with respect to the moment of the stabbing, the following exchange occurred between appellant and the investigator:

Investigator: He took off his shirt and everything.

Appellant: Yes, because the guy is well-built, . . . he took off his shirt and he was boasting[,] and I told him, "You know what, guy?"

Investigator: And you put him in his place?

Appellant: Yes, I told him you know what man? . . . I am going to fucking beat you up[.] . . . [W]hen I told him that, I don't know what the guy had in his hands. What was it? I don't fucking know but he had everybody following him. I told him, I am not one of those fucking guys, you are not going to scare me if you are well built or not, . . . I am going to beat you up. No man, the guy cut me really bad. . . .

In his second statement to police around an hour later, appellant similarly stated that the fight with Martinez broke out near the pool table after Martinez took off his shirt. Appellant stated,

> The dude is well-built, [ ] he took off his shirt, and no one is good enough for me. . . . I told him, you know what? I said, look dude, I am loaded dude, you may hit me with some punches but I don't fucking care, I am not going to back up, and he told me what the fuck, and I don't know what is that he got ahold of and he charged at me, and I tried to take it from him, and look man, I don't fucking know what it was because [the cut] is really deep.
> . . .
>  Everybody backed out, not me, do you understand me? He is not going to intimidate me and the guy tried to cut me man, I am going to take it from him and I am going to fucking cut him back, I am not backing [down], do you understand? . . . And I did not do that thing just for nothing, I did it because I can't cope with someone that tries to show off with me, even my own brother[.]

Appellant said that he stabbed Martinez one time, "in the arm or I don't fucking know [where]," and appellant threw the object down and ran. The investigator then asked appellant how many punctures he thought Martinez had, and, inconsistent with his previous statement

indicating that he had stabbed Martinez once, appellant said four. Appellant described the object he took from Martinez as being "a sharp piece of metal, it was not a knife, it was like a sharp point," but said he did not know what the object was. He asserted that, had he not taken the weapon from Martinez, Martinez "would have killed" him.

With respect to the relative strength of appellant's defensive evidence, we observe that, save for appellant's own statements to police, none of the other evidence presented at trial supported a justification defense. This observation is consistent with the court of appeals's assessment of the evidence. *See Villarreal*, 393 S.W.3d at 875-76 (observing that "none of the witnesses at trial stated that Martinez was in possession of a weapon, and all of the eyewitnesses testified that [appellant] stabbed Martinez more than once"). Appellant's version of events was not only in conflict with the testimony of every other witness at trial, all of whom testified that Martinez was at all times unarmed and that appellant stabbed him multiple times in an act of aggression, but it was also inconsistent with the physical evidence. For example, although appellant asserted that Martinez had stabbed him in the hand as appellant attempted to disarm him, that assertion was rebutted by the DNA evidence, which revealed only the presence of Martinez's blood on the knife, and it was further rebutted by the testimony of Dr. Stern, who reported that appellant's hand wound had not been caused by the knife. Additionally, although appellant stated that he stabbed Martinez once, the physical evidence indicated that Martinez sustained six stab wounds. In light of the entire record that shows that appellant's defensive evidence was weak when viewed together with

the other evidence, we cannot conclude that there is a substantial risk that appellant was harmed as a result of the omission of the instruction, or that the addition of a presumption-of-reasonableness instruction likely would have altered the outcome as to the question of whether he acted in self-defense. *Compare Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007) (finding existence of egregious harm, in part, because the "risk" of harm from erroneously omitted unanimity instruction was "substantial" in light of fact that "greater bulk" of State's evidence was devoted to establishing one theory of guilt over the other), *with Allen*, 253 S.W.3d at 268 (concluding that, even had jury been properly instructed, it was "not likely" that jury would have found in defendant's favor as to defensive issue). And, in light of this determination, we disagree with the court of appeals's suggestion that the mere existence of conflicting testimony relating to the details of the stabbing is indicative of egregious harm. *See Olivas*, 202 S.W.3d at 148.

### c. Statutory Presumption Unsupported by Evidence

The court of appeals also erred in its harm analysis by failing to account for the fact that the presumption of reasonableness does not apply to an actor who had no reason to believe that the person against whom deadly force was used was attempting to commit murder, nor does it apply to one who used deadly force while otherwise engaged in criminal activity. *See* TEX. PENAL CODE § 9.32(b)(1)(C), (b)(3). And, on the facts of this case, the presumption appears to be inapplicable on either basis.

With respect to the first of these circumstances, the requirement that appellant knew

or had reason to know that Martinez was attempting to commit murder, we note that, according to appellant's statements, by the time of the stabbing, appellant had disarmed Martinez and taken his weapon from him. And according to the testimony of other witnesses, appellant was at all times armed with a knife, but Martinez was unarmed. Regardless of which version of events the jury chose to believe, the record conclusively shows that, as of the moment of the stabbing, Martinez was unarmed. And, although in his statements to police appellant suggested that Martinez would have killed him if he had not taken the weapon away from Martinez, appellant at no point expressed fear that Martinez posed a threat to him after appellant had taken away the weapon. This observation is consistent with appellant's additional statements indicating that the primary motivation for the stabbing was not out of fear that he was about to be murdered by Martinez, but was to teach Martinez that he was "no match" for appellant. We, therefore, determine that the record shows that, by the time of the stabbing, appellant had no "reason to believe" that Martinez was attempting to murder him and, as such, the presumption was inapplicable. *See* TEX. PENAL CODE § 9.32(b)(1)(C).

With respect to the second circumstance that would render the presumption inapplicable, that appellant was otherwise engaged in criminal activity, we observe that, immediately prior to the stabbing, even according to his own statements, appellant told Martinez that he was going to "fucking beat [him] up." This conduct constituted a class C misdemeanor assault by threat in violation of Texas Penal Code Section 22.01(a)(2). *See id.*

§ 22.01(a)(2). Other witnesses testified that appellant had attempted to hit partygoer Garza and had taken the first swing at Martinez before stabbing him, which conduct would also constitute an assault. *See id.* And the record indicates that, as of the time of this assaultive conduct by appellant, Martinez had not physically threatened appellant, but had only taken off his shirt. At the very least, in light of appellant's own statements indicating that he intended to start a fight with Martinez because Martinez was "boasting" and had threatened Martinez with physical harm prior to the stabbing, we conclude that the record shows that appellant was otherwise engaged in criminal activity at the time of the stabbing and thus was statutorily ineligible to receive the benefit of the presumption of reasonableness. *See id.* § 9.32(b)(3).

In sum, even had the jury been properly instructed as to the presumption of reasonableness under Section 9.32(b), we conclude that the presumption was inapplicable to the facts of this case based on the lack of evidence to support the presumption. Furthermore, in the alternative, we conclude that, in light of the fact that appellant's out-of-court statements were internally inconsistent with his claim of self-defense and were contradicted by the entirety of the record, we cannot conclude that the omission of the instruction deprived appellant of a fair trial. We conclude that this factor weighs substantially against a finding of egregious harm.

### 3. Arguments of Counsel

We also decide that the court of appeals erred in its determination that the omission

of the instruction egregiously harmed appellant by depriving him of his sole defense at trial. *See Villarreal*, 393 S.W.3d at 876. Contrary to this suggestion, a close examination of appellant's trial counsel's arguments suggests that a justification defense was presented as one of two alternatives for the jury, only one of which was affected by the error. Because the omission of the instruction affected only appellant's secondary defensive theory, we do not find that the omitted instruction touched upon a "vital aspect" of his case. *See Allen*, 253 S.W.3d at 266 (explaining that omission of reasonable-doubt language touched upon "vital aspect" of defendant's case because her primary defensive theory was affected by error).

At trial, defense counsel attempted to establish that the State had failed in its burden to prove appellant's identity as the person who stabbed Martinez, and he further attempted to discount appellant's statements to the police, which were the sole evidence of self-defense and which had been admitted by the State, as not credible. In his closing arguments to the jury, rather than advancing appellant's justification defense, counsel highlighted the inconsistencies in witness testimony for the purpose of undermining the State's case against appellant. *See Villarreal*, 393 S.W.3d at 876 (observing that counsel "chose not to advance Villarreal's theory of self-defense"). In particular, defense counsel told the jury that it was going to have to "judge the credibility of the witnesses [with respect to] where they were standing, what they were able to see from where they were standing." In defense counsel's sole reference to appellant's statements to investigators asserting self-defense, he sought to downplay the probative value of those statements, stating that they were made "before any

lawyer, before any judge magistrated him, even before the charges were filed[.]"[7] Because it is clear from these statements that defense counsel's alternative assertion was that the State had failed to establish appellant's identity and culpability for the stabbing of Martinez, we disagree with the court of appeals's determination that appellant's sole defense was vitally undermined as a result of the omission of the instruction. *See id.*

As appellant points out in his brief in this Court, defense counsel did rely somewhat on the deadly-force defense by arguing to the jury that Martinez was the aggressor. Defense counsel noted that one witness, Mario Esquivel, had initially failed to mention that he saw appellant holding a knife, whereas another witness, Travis Sweet, had suggested in his initial statements to police that Martinez was the one holding the knife. To this extent, we agree with the court of appeals that defense counsel at least alternatively argued the deadly-force defensive theory. Contrary to the court of appeals's suggestion that the deadly-force defense was appellant's sole defensive theory, defense counsel relied on that defense as an alternative to his other defense that the State's evidence failed to prove appellant's culpability beyond a reasonable doubt on the basis of the weakness in the State's evidence.

---

[7]In light of appellant's implausible and inconsistent statements to police officers as detailed above, it appears that defense counsel chose not to rely solely on appellant's claim of self-defense, but instead attempted to persuade jurors to acquit appellant on the basis of a reasonable doubt as to whether he was responsible for the stabbing of Martinez. Regardless of what counsel's trial strategy may have been, our role at this stage in conducting an egregious harm analysis is not to determine whether that strategy was valid, but rather is to determine whether the error vitally affected appellant's defense. *See Reeves v. State*, 420 S.W.3d 812, 820-21 (Tex. Crim. App. 2013) ("It is also relevant to the harm analysis that the erroneous instruction . . . undermined appellant's sole defense.").

To the extent that the court of appeals characterized counsel's arguments as highlighting "the reasonableness, or lack thereof, of Villarreal's actions," *see id.*, it appears that the court was referring to the arguments by the State's prosecutor, who challenged the notion that appellant's actions could be justified by self-defense. But even those arguments focused primarily on appellant's lack of credibility in his global assertion to investigators that he had acted in self-defense. The arguments did not appear to urge the jury to reject the justification defense on the narrower basis that appellant was unreasonable in his belief that deadly force was immediately necessary. Because the omitted presumption-of-reasonableness instruction pertains only to the question of the reasonableness of an actor's belief that the use of deadly force was immediately necessary, and because the reasonableness of appellant's belief was not at the center of either defense counsel's or the State's arguments, we conclude that this factor weighs against a finding of egregious harm. *See Almanza*, 686 S.W.2d at 171.

**4**. **Entirety of the Record, Including Any Other Relevant Information**

In addition to the matters raised above, we observe that, at the punishment stage, the jury rejected a sudden-passion special issue, which, on the facts of this case, constitutes an additional circumstance suggesting that appellant was not egregiously harmed by the omission of the instruction. *See* TEX. PENAL CODE § 19.02(a), (d). Although we recognize that sudden passion and self-defense are distinct inquiries for which a jury's verdict will not always overlap, we note that we have previously gleaned information as to a jury's likely

treatment of a sudden-passion special issue based on the jury's rejection of a self-defense question. *See Wooten v. State*, 400 S.W.3d 601, 608-09 (Tex. Crim. App. 2013). And we think, given the circumstances of the present case, that a parallel inference can also be drawn here.

In *Wooten*, this Court considered the question whether the defendant had been harmed by the omission of a requested sudden-passion special issue at the punishment phase. *Id.* at 608. In holding that he had not, the Court observed that, given that the jury had rejected Wooten's claim that his use of deadly force was justified, it was, on the facts of that record, "highly unlikely" that the jury would have nevertheless found that he acted under the immediate influence of sudden passion. *Id.* at 609. The Court's holding in *Wooten* was based on the rationale that, by its verdict of guilty, the jury had indicated that it "simply did not believe" Wooten's self-defense claim, which was premised on a factual assertion that the complainant had fired upon Wooten first. *Id.* Had the jury believed Wooten's version of events, the jury "almost certainly" would have acquitted him based on self-defense, but it did not. *Id.* The Court accordingly concluded that Wooten had not suffered "some harm" as a result of the omitted sudden passion special issue. *Id.* at 610.

Here, similarly, the jury's rejection of a sudden-passion special issue suggests that the jury very likely would have rejected the assertion that appellant's use of deadly force was justified, regardless of whether it had received a presumption-of-reasonableness instruction. In support of this observation, we note that, had the jury believed that Martinez in fact

attempted to stab appellant with a knife, then it would have almost certainly found in appellant's favor on the issue of whether he acted under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PENAL CODE § 19.02(a)(1), (a)(2).[8] But, because the jury answered the sudden-passion special issue in the negative, we can infer that the jury did not believe appellant's version of events, and we, therefore, decide that it is exceedingly unlikely that a presumption-of-reasonableness instruction would have had any bearing on the jury's answer as to whether appellant acted in self-defense. *See Wooten*, 400 S.W.3d at 609.

In sum, we observe that a charge on the presumption of reasonableness would have authorized the jury not to apply the presumption if it determined that the State had proved beyond a reasonable doubt either that appellant had no reason to know that Martinez was attempting to commit murder or that appellant was otherwise engaged in criminal activity. *See* TEX. PENAL CODE § 9.32(b). And, in light of the relative strength of the evidence in the record indicating that appellant was the aggressor and stabbed the unarmed Martinez as compared to the weaker evidence giving rise to appellant's justification defense, and considering that appellant's defensive strategy relied upon two theories, only one of which would have been affected by the error, we are persuaded that there is no substantial risk of

---

[8]The Texas Penal Code defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *See* TEX. PENAL CODE § 19.02(a)(1). "Sudden passion," in turn, is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *See id.* § 19.02(a)(2).

harm to appellant as a result of the omission of the instruction. *See Stuhler*, 218 S.W.3d at 719-20; *Allen*, 253 S.W.3d at 267-68. In light of these considerations, we, therefore, conclude that the record fails to indicate the existence of egregious harm.

### III. Conclusion

We hold that the court of appeals erred by concluding that appellant was egregiously harmed by the omission of a presumption-of-reasonableness instruction. We reverse the judgment of the court of appeals and remand this case to that court for consideration of appellant's remaining points of error raised on appeal.

Delivered: February 4, 2015

Publish