**Opinion filed June 13, 2024**



## In The

# Eleventh Court of Appeals

_____

### No. 11-22-00117-CR

_____

### PAUL GONZALEZ, JR., Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Martin County, Texas**
**Trial Court Cause No. 1763**

## M E M O R A N D U M   O P I N I O N

Appellant was indicted for the offense of continuous sexual abuse of a child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b), (c), (h) (West Supp. 2023). The jury convicted Appellant of the charged offense and assessed his punishment at seventy-five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice.

Appellant raises two issues on appeal: the trial court erred when it (1) did not orally pronounce Appellant's sentence in open court and in his presence, and (2) failed to properly limit in its charge the definitions of the culpable mental states that apply to the offense for which Appellant was convicted.[1] We affirm.

## I. *Factual Background*

Because Appellant does not challenge the sufficiency of the evidence to support his conviction, we only recite the facts that are necessary to address the issues that he has raised on appeal.

The indictment alleged that A.A. was the victim of the charged offense. On November 29, 2018, A.A. was examined by Dr. Khadijah Abdurrazaq, who confirmed that A.A. was pregnant; she was fourteen years old at the time and it was projected that her pregnancy was advanced (approximately thirty-two weeks gestation). A.A.'s mother, L.A., was present during Dr. Abdurrazaq's examination. On December 3, 2018, A.A. and L.A. reported A.A.'s situation to Officer Joe Robert Morales of the Stanton Police Department. During their meeting with Officer Morales, A.A. and L.A. advised that they believed Appellant was the father of A.A.'s unborn child. To determine paternity, DNA samples were subsequently obtained from Appellant, A.A., and A.A.'s child.

---

[1]Appellant's first court-appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Following the procedures set forth in *Anders*, *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), and *In re Schulman*, 252 S.W.3d 403 (Tex. Crim. App. 2008), we independently reviewed the record and concluded that this appeal was not particularly amenable to disposition under *Anders*. We also noted that, contrary to Appellant's assertion, he was sentenced by the trial court in accordance with the mandates of Article 42.03 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a) (West Supp. 2023). However, the record of Appellant's sentencing hearing was not submitted to us with the original reporter's record.

Accordingly, we granted counsel's motion to withdraw, abated this appeal, and remanded this cause to the trial court with instructions to appoint other appellate counsel. New appellate counsel was directed to file a brief on the merits and address any substantive issues that appellate counsel deemed to be arguable. Further, we directed the clerk and the court reporter for the 118th District Court to submit the record of Appellant's sentencing hearing to us. This appeal was reinstated after the trial court appointed new appellate counsel and the record of Appellant's sentencing hearing was received.

The DNA samples were tested by Farah Plopper, a forensic DNA analyst with the University of North Texas Center for Human Identification in Fort Worth. The DNA test results showed that Appellant could not be excluded as the child's biological father—99.9999991 percent of the male population was excluded indicating that a 0.0000009 percent chance existed that a person other than Appellant was the child's father. Based on the DNA test results, and other information obtained by law enforcement during their investigation, Appellant was later indicted for the continuous sexual abuse of A.A.

At trial, A.A. and L.A. testified and described that several incidents of alleged sexual abuse had occurred between Appellant and A.A. from 2013 to 2018. Despite the DNA test results, which Appellant could not and did not refute, he denied that he ever had any form of sexual contact with A.A.

## II. *The Pronouncement of Appellant's Sentence*

In his first issue, Appellant contends that the trial court erred because it did not pronounce Appellant's sentence in open court and in his presence. The State responds that Appellant was, in fact, sentenced in accordance with the requirements of Article 42.03. We agree with the State.

The trial court must orally pronounce the sentence to be imposed against the defendant in the defendant's presence. *See* CRIM. PROC. art. 42.03, § 1(a); *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). Here, the trial court orally pronounced Appellant's sentence in his presence, and in open court, after the underlying trial of this case had concluded. Accordingly, we overrule Appellant's first issue because it is now moot. *See Sherman v. State*, No. 11-19-00190-CR, 2022 WL 2839201, at *1 (Tex. App.—Eastland July 21, 2022, no pet.) (mem. op., not designated for publication) (citing *Diaz v. State*, No. 13-14-00675-CR, 2017 WL 4987665, at *10 (Tex. App.—Corpus Christi–Edinburg Nov. 2, 2017, pet. ref'd) (mem. op., not designated for publication)).

3

### III. *The Culpable Mental State Definitions*

In his second issue, Appellant contends that the trial court failed to properly define and restrict the culpable mental states that apply to the offense of continuous sexual abuse of a child.

The Penal Code defines four separate culpable mental states—intentionally, knowingly, recklessly, and criminally negligent. *See* PENAL § 6.03 (West 2021). "'[T]he scope of those culpable mental states is limited by the type of offense [that is charged],' which depends on the 'conduct element.'" *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (quoting *Cook v. State*, 884 S.W.2d 485, 487 (Tex. Crim. App. 1994)). "There are three 'conduct elements:' (1) nature of [the] conduct; (2) result of [the] conduct; and (3) the circumstances surrounding the conduct." *Id.* (quoting *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989)); *see also Young v. State*, 341 S.W.3d 417, 423 (Tex. Crim. App. 2011). An offense may contain any one or more conduct elements that alone or in combination form the overall behavior that the legislature intended to criminalize, and it is these essential conduct elements to which a culpable mental state must apply. *McQueen*, 781 S.W.2d at 603. A trial court errs when it fails to limit in its charge the definition(s) of the applicable culpable mental state(s) to the conduct element or elements of the specific offense to which they apply. *Price v. State*, 457 S.W.3d 437, 441 (Tex. Crim. App. 2015); *Cook*, 884 S.W.2d at 491.

Appellant was indicted for committing the offense of continuous sexual abuse of a child. *See* PENAL § 21.02(b), (c), (h). The Court of Criminal Appeals, in the context of a double jeopardy claim, has held that "continuous sexual abuse of a child has a nature-of-conduct component: the repeated commission of sexual abuse," but that the offense "also has several essential circumstance-surrounding-conduct components: that the victim of the repeated sexual abuse must be a child younger than 14 years of age, and that the instances of sexual abuse must occur over a period

4

of at least 30 days in duration." *Ramos v. State*, 636 S.W.3d 646, 656 (Tex. Crim. App. 2021); *see also Price v. State*, No. 10-22-00047-CR, 2023 WL 4363066, at *2 (Tex. App.—Waco July 5, 2023, no pet.) (mem. op., not designated for publication).

Appellant contends on appeal that the applicable mental states for the charged offense—"intentionally" and "knowingly"—were incorrectly defined in the trial court's charge. The trial court's charge defined "intentionally" and "knowingly" as follows:

> A person acts intentionally, or with intent, with respect to a *result* of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the *nature* of his conduct or to the *circumstances surrounding his conduct* when he is aware of the *nature* of his conduct or that *the circumstances exist*. A person acts knowingly, or with knowledge, with respect to his conduct, when he is aware that his conduct is reasonably certain to cause the result.

*See generally* PENAL § 6.03(a)–(b) (emphasis added). We agree with Appellant. The charge's definition of "intentionally" refers to the incorrect conduct element— "*result* of [his] conduct"—and omits any reference to one of the proper conduct elements for this offense—"*nature* of [the] conduct." Further, the second sentence of the charge's "knowingly" definition, by its reference to the phrase "cause the result," incorrectly includes a seemingly incomplete reference to the "*result* of conduct" element. Therefore, because the mental states as defined in the trial court's charge were not properly limited to the applicable "nature-of-conduct" and "circumstances surrounding the conduct" conduct elements, the trial court erred.

## IV. *Charge Error*

### A. *Standard of Review*

Reviewing complaints of charge error is a two-step process. *Campbell*, 664 S.W.3d at 245 (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)).

5

First, we must determine whether error exists. *Id.* Second, if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to require reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd). The applicable standard of review to be utilized for charge error depends on whether the claimed error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14) (West 2007). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *Harm Analysis*

Because we have determined that charge error exists, we must now conduct the necessary harm analysis. *See Ngo*, 175 S.W.3d at 743. There is no dispute that Appellant's trial counsel did not object to the above definitions of "intentionally" and "knowingly" as they were submitted in the trial court's charge. Therefore, we review the complained-of charge error under the *Almanza* "egregious harm" standard. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Under this standard,

6

when, as in this case, the defendant or his trial counsel fail to assert proper objections to the trial court's charge or fail to request and present a proper jury instruction, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009); *Almanza*, 686 S.W.2d at 171.

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villarreal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Further, "[a]n egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

C. *The Almanza Factors*

In *Almanza*, the Court of Criminal Appeals identified the factors that a reviewing court should consider when determining whether the complained-of charge error resulted in egregious harm. 686 S.W.2d at 171. They are: (1) the charge itself; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *See Villarreal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). These factors guide our analysis.[2] *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

---

[2]We note that Appellant does not separately address the *Almanza* factors and to what extent, if any, these factors would support a finding of egregious harm. Rather, Appellant only contends, globally, that because the trial court's charge error "amounts to fundamental error," Appellant's trial counsel was not required to object to these definitional deficiencies to preserve error for our review.

### 1.  *The Charge as a Whole*

The first *Almanza* factor requires that we review the trial court's charge in its entirety.  *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.  The Court of Criminal Appeals has held that, "[w]here the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."  *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999); *see also Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious.").

We note that the application paragraph of the trial court's charge substantially tracked the Penal Code's standard mental culpability definitions for "intentionally" and "knowingly."  *See* PENAL § 6.03(a)–(b).  It is also significant that the application paragraph properly tracked the language of the indictment, the necessary statutory language, and the elements of continuous sexual abuse of a child.  No harm results from the trial court's failure to limit the definitions of the culpable mental states in the abstract portion of its charge if the application paragraph correctly states, as it did here, the elements of the charged offense and directs the jury to the appropriate definitions.  *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995); *Hughes v. State*, 897 S.W.2d 285, 296–97 (Tex. Crim. App. 1994) ("[W]hen [the terms "intentionally" and "knowingly"] are viewed in their factual context, it becomes apparent which conduct element applies to which element of the offense."); *Price*, 2023 WL 4363066, at *3 ("The extra result-of-conduct language in the abstract definitions was merely superfluous as it had no effect on the jury's ability to implement the application paragraph.").

Here, although the trial court's charge incorrectly omitted one of the required conduct elements in the definition of "intentionally" and unnecessarily included,

8

albeit an incomplete, conduct element in the definition of "knowingly," the application portion of its charge sufficiently tracked the language of the indictment and the statutory elements of the indicted offense. Contrary to Appellant's suggestion, the trial court's failure to limit the definitions of the culpable mental states in this instance does not result in fundamental error or egregious harm. As such, this factor weighs against a finding of egregious harm. *See Medina*, 7 S.W.3d at 640.

### 2. *The Evidence Presented at Trial*

The second *Almanza* factor focuses on the evidence presented at trial. *Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. On appeal, Appellant does not contend that the evidence is insufficient to support his conviction. Instead, Appellant focuses on whether the charge error of which he complains improperly affected or influenced the jury's decision to find him guilty. The theory advanced by Appellant was that he never sexually abused A.A., and his primary defensive strategies, which he re-urges on appeal, were to attack the credibility of A.A. and L.A., and to challenge the accuracy of the DNA testing and attendant results.

The evidence presented to the jury consisted primarily of the testimony of A.A. and L.A. and their statements to law enforcement about the sexual abuse they claimed that Appellant had inflicted upon A.A. over the years, and the collection and testing of the DNA samples obtained from Appellant, A.A., and A.A.'s child. The DNA evidence was conclusive and was not refuted by Appellant or any other source. Although Appellant testified and denied that he ever sexually abused A.A., the jury was free to reject Appellant's explanations for how A.A. became pregnant with a child that reliable, scientific evidence essentially proved was his.

In this case, Appellant did not contend that he did not have the requisite intent to sexually abuse A.A. Rather, Appellant's primary theory and defense was that the sexual abuse never occurred. As such, his mental state was not an issue at trial.

9

Accordingly, the state of the evidence weighs against a finding of egregious harm with respect to how the terms "intentionally" and "knowingly" were defined in the trial court's charge.

### 3. *The Arguments of Counsel*

The third *Almanza* factor pertains to the arguments of counsel. In weighing this factor, we must determine whether any statements made by the State, Appellant's trial counsel, or the trial court exacerbated or ameliorated the charge error. *Arrington*, 451 S.W.3d at 844; *see also Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171.

The closing argument of Appellant's trial counsel essentially focused on Appellant's denial that he never sexually abused A.A., A.A.'s credibility, and the alleged inconsistencies in her and L.A.'s testimony. In its closing argument, the State did not discuss or allude to Appellant's intent or knowledge. Rather, the State's argument focused primarily on the DNA evidence and, like Appellant's argument, A.A.'s testimony and statements. Therefore, because the matter of Appellant's intent or knowledge was not a focus of counsels' arguments, the third factor does not weigh in favor of a finding of egregious harm.

### 4. *Other Relevant Information*

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the charge error. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *see also Villarreal*, 453 S.W.3d at 433; *Almanza*, 686 S.W.2d at 171. We have outlined the evidence above that is pertinent to our harm analysis. Further, nothing in the record before us indicates that the jury was unable to render a correct verdict, consistent with the evidence presented, based on the trial court's erroneous definitions of "intentionally" and "knowingly." In fact, the record shows that, during its deliberations, the jury

never inquired, submitted any note, or communicated to the trial court any confusion or concerns by them regarding any aspect of the charge. Because the record does not demonstrate that the erroneous definitions affected or influenced the jury's ability to determine whether Appellant had the requisite intent or knowledge to sexually abuse A.A., this factor weighs against a finding of egregious harm.

### 5. *The Almanza Factors Considered Together*

We hold that the trial court erred when it submitted incorrect conduct element definitions in its charge. However, considering the record before us and the *Almanza* factors, we conclude that this error did not result in a level of egregious harm such that Appellant was deprived of a fair and impartial trial. Accordingly, we overrule Appellant's second issue.

### V. *This Court's Ruling*

We affirm the judgment of the trial court.



W. STACY TROTTER

JUSTICE


June 13, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.