In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-16-00458-CR

PRESTON WILLIAM REPMAN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 75th District Court
Liberty County, Texas
Trial Cause No. CR32307

## MEMORANDUM OPINION

Preston William Repman appeals from a final judgment following a trial in which a jury found him guilty of murdering his grandfather. *See* Tex. Penal Code Ann. § 19.02 (West 2011). In a single issue, Repman argues the trial court erred and caused egregious harm by giving the jury a charge that included an abstract paragraph that informed the jury that it could consider a defendant's use of deadly force to be justified if the defendant acted in the defense of a third person, but that

the charge then failed to include further instructions explaining how the jury was required to apply the concept to the facts admitted during Repman's trial. At trial, Repman failed to lodge any objections to the jury charge. Because the trial court's alleged error did not result in egregious harm, we affirm.

Background

On the evening of November 1, 2015, Repman and his grandfather, Melvin Linck, became involved in a heated argument inside Melvin's home. Melvin, Melvin's wife, Murl, and Repman's friend, David Strange, were the only eyewitnesses to the altercation that occurred a short time after the argument began. At one point, after the men exchanged blows, they threatened to kill each other. Melvin went to his bedroom to retrieve a gun; however, Murl followed him into the bedroom, where she took possession of her husband's guns. When they returned from their bedroom, Repman stabbed Melvin in the chest with a knife. Shortly after he was stabbed, Melvin bled to death. According to Dr. John Ralston, a forensic pathologist who testified in Repman's trial, the stab wound to Melvin's chest "cut the base of the aorta[,]" and caused his death.

In January 2016, a Liberty County grand jury indicted Repman for Melvin's murder. Repman's trial began in October 2016. Although Repman did not testify in the guilt-innocence phase of the trial, his attorney told the jury in opening statement that Repman "stab[bed] his grandfather in the chest." Repman's attorney explained

2

that evidence would be presented in the trial supporting Repman's claim that he stabbed Melvin in self-defense, and that "after all the evidence is presented[,] you will conclude that Preston acted in self-defense." In opening statement, Repman's attorney did not suggest that the evidence in the trial would show that Repman stabbed Melvin to defend Murl.

Murl was the only eyewitness who testified during the trial regarding what happened in the home the night Melvin was killed. During the trial, Murl explained that approximately one week before the altercation occurred, she and Melvin agreed that they wanted Repman to move out of their home. According to Murl, although she told Repman he had to move, he refused.

On November 1, 2015, Melvin, accompanied by Murl, returned home after gambling at a Louisiana casino with their sons. Shortly after they returned, Melvin and Repman became involved in a heated argument. Melvin told Repman that he "[had] to go." While the two were arguing, Melvin accused Repman of lying to him about how many miles he had driven Melvin's truck. In the course of the argument, Melvin grabbed Repman's shirt. When Repman attempted to break Melvin's grip, "[Repman] hit Melvin in the chin and knocked him over backwards." The men continued to exchange blows while fighting on the floor. Ultimately, Strange, who Repman had invited over while the Lincks were gone, pulled Repman off Melvin. After the two men were separated, they exchanged verbal threats. According to

3

Murl, Repman was very angry at that point, and he said: "I will kill you, you old bastard." Melvin responded to Repman's threat, stating: "I will show you. I have something for you." Melvin left the room where the fight occurred and went into his bedroom.

Murl testified that she followed Melvin into their bedroom, where she found Melvin in the process of retrieving a gun. Murl closed and locked the bedroom door, and she acquired all three of the guns that Melvin kept in the bedroom. According to Murl, she was carrying three unloaded guns as Melvin followed her from the bedroom into the dining room. As they left the bedroom, Melvin had his hands on her shoulders.

When Strange saw the Lincks enter the dining room, Strange yelled: "[Repman], he has got a gun." Murl denied that Melvin took any guns from the bedroom. However, in opening statement, Repman's attorneys claimed that Repman might have seen the barrel of a gun pointed in his direction because Murl entered the dining room with a gun tucked under her arm. When Murl entered the dining room, Repman retreated to the kitchen, where he got a knife. Murl stood between the two men as Repman approached them with a knife. Murl explained, at that point that evening, "I thought he was going to stab me or Melvin." Melvin pushed Murl aside, stepped forward, and then lunged at Repman, yelling: "I will kill you." As Melvin lunged forward, Repman stabbed him. On cross-examination, Murl agreed that she

4

failed to tell the police when she was interviewed that Repman verbally threatened to kill Melvin while they were fighting on the floor. Murl also testified that on the night Melvin was killed, she "was never worried that [Melvin] would hurt [her,]" and that Repman did not have a reason to assume that Melvin was a danger to her.

Only one witness, Sergeant Josh Cummins, was called to testify on Repman's behalf during the guilt-innocence phase of his trial. Sergeant Cummins, an employee of the Liberty County Sheriff's Office, explained in his testimony that he talked to Repman after taking him to jail. According to Sergeant Cummins, Repman told him that he acted in self-defense or to defend another when he stabbed Melvin.

At the conclusion of the trial, the jury found Repman guilty of murder. Approximately thirty days later, the trial court[1] held a sentencing hearing. When the hearing concluded, the trial court assessed Repman's sentence at life in prison.

The Charge

Generally, Texas law justifies a defendant's use of deadly force to defend another against someone else's use of unlawful deadly force if the defendant reasonably believes that using deadly force is immediately necessary to protect a third person from imminent harm. *See* Tex. Penal Code Ann. § 9.33 (West 2011).

---

[1] Before the trial began, Repman elected to have the trial court assess his punishment.

In one appellate issue, Repman complains the trial court erred by failing to instruct the jury in the application section of the charge that the State was required to prove, beyond reasonable doubt, that Repman was not acting to defend Murl from Melvin when Repman stabbed him, and that if the State failed to prove that Repman had not acted in the defense of another, the jury was required to return a verdict finding Repman not guilty of murder.

The abstract paragraphs in the charge submitted by the trial court to the jury in Repman's case include an instruction stating that the jury had heard evidence that Repman believed his use of deadly force was necessary to defend "a third person against Melvin['s] use or attempted use of unlawful deadly force." On appeal, Repman complains that the application paragraphs in the charge failed to explain to the jury the steps that it was required to take to determine whether the defense applied based on the testimony and evidence the jury considered in his trial.[2] In

---

[2] The charge includes application paragraphs that allowed the jury to consider whether Repman was acting in self-defense. The application paragraphs relevant to the instructions on self-defense explain, in part, that if the jury found the State had proven the offense of murder beyond reasonable doubt, "that self-defense does not apply to the defendant's conduct." Other parts of the application paragraphs on self-defense explain that the State was required to overcome the evidence raising an issue on self-defense. Finally, the application section of the charge relevant to self-defense instructs that if the State failed to prove that Repman was not acting in self-defense, that the jury was required to find for Repman on the issue and to find him "not guilty."

Repman's case, we note that Repman's attorneys did not object to any omissions in the charge.[3] In his brief, Repman concludes that he is entitled to another trial because the charge was incomplete and the absence of instructions in the application paragraphs of the charge explaining the steps the jury was required to take to resolve whether Repman killed Melvin defending Murl caused egregious harm.

Standard of Review

When a defendant raises an issue alleging charge error for the first time on appeal, we analyze the issue under the standards recognized in *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Under *Almanza,* when the defendant has failed to preserve his complaint about an alleged error in a charge, the case must be reversed only if the error caused the defendant egregious harm. *Id.* (explaining that egregious harm occurs if the error is so egregious and created such harm that the defendant did not receive a fair and impartial trial).

To evaluate the degree to which a defendant might have been harmed by unpreserved error that exists in a jury charge, a reviewing court should consider "the entire jury charge, the state of the evidence, including the contested issues and

---

[3] The trial court conducted a charge conference to confer with the attorneys regarding the court's proposed charge. In the conference, the trial court asked Repman's attorneys if they had any objections to the proposed charge. In response, one of Repman's attorneys stated: "We have reviewed the charge, and we have no objections."

7

weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.; see also Allen v. State,* 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Ngo v. State,* 175 S.W.3d 738, 750 (Tex. Crim. App. 2005) (quoting *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim. App. 1996)).

Analysis

In Repman's case, although the trial court instructed the jury on the issue of self-defense, the jury found Repman guilty of murder. Based on the jury's findings on the self-defense issue, the jury must have determined that the State had proven, beyond reasonable doubt, that Repman did not believe his conduct was immediately necessary to protect himself against Melvin's use of unlawful deadly force; or, that Repman's belief that he needed to use deadly force was not reasonable; or that Repman provoked Melvin's use of unlawful deadly force in the process of finding Repman guilty. *See* Tex. Penal Code Ann. § 9.32(a)(2) (West 2011).

Generally, when a jury was instructed on the issue of self-defense and finds the defendant guilty, the jury has implicitly rejected the self-defense theory, a determination that precludes the possibility that the defendant was justified in using deadly force to defend a third person. *Hernandez v. State*, 914 S.W.2d 218, 224 (Tex.

8

App.—El Paso 1996, pet. ref'd). In Repman's case, the evidence before the jury, when considered as a whole, established that although Melvin threatened to kill Repman, he never threatened to kill Murl on the evening that Melvin was killed. *See Almanza,* 686 S.W.2d at 171 (explaining that appeals courts should consider all of the evidence admitted in the trial when reviewing for egregious harm). For example, no testimony in the trial was introduced to show that Repman ever saw Melvin point a gun at Murl. Second, when Melvin and Murl entered the dining room together after they argued in their bedroom, Murl's description of the struggle that occurred in the bedroom—which is the only evidence the jury heard about that matter in the trial— does not show that Melvin threatened to hurt Murl or that he injured her. Third, there is no testimony in the trial indicating that Melvin ever physically injured or verbally abused Murl in Repman's presence or that he was aware that such an incident had previously occurred. Fourth, since Repman did not testify, the only evidence from which the jury might have inferred that Repman might have perceived that Murl was in danger was based wholly on the evidence describing the events that occurred on the evening of November 1. Fifth, Murl's testimony in the trial revealed her perspective about whether Melvin presented any danger that he might injure her on the night Melvin was killed: she testified that she was not afraid of him and that she did not need to be protected from him.

The abstract portion of the charge, which referenced that the jury had heard evidence that Repman was defending Murl when he stabbed Melvin, is supported solely by the response Sergeant Cummins provided to a question posed by one of Repman's attorneys who asked:

Q. During that conversation [with Repman on the night of the occurrence,] did [Repman] tell you he acted in self-defense or in defense of another person?

A. Yes.

Except for this answer, Sergeant Cummins did not testify about what Repman told him on the night Melvin was killed. Repman did not testify in the trial, so there is no other testimony that explains whether he ever thought that Melvin represented an immediate threat to Murl. Standing alone, Sergeant Cummins' answer to this leading and compound question is insufficient to raise an issue that Repman's actions were justified because he reasonably believed that he was acting in Murl's defense.

We also look to the arguments of counsel in determining the extent to which Repman suffered any egregious harm. During closing argument, the prosecutor focused on Repman's claim of self-defense. For example, the prosecutor argued that the evidence in the trial showed that Melvin did not use any force against Repman after Melvin came out of the bedroom. He also explained that when Murl and Melvin returned from their bedroom, Melvin's hands were on Murl's shoulders, and that

none of the testimony showed that Melvin ever displayed a gun while he was in the dining room. The prosecutor concluded that the State's evidence disproved any evidence tending to suggest that Repman stabbed Melvin in self-defense.

The attorney who argued for Repman in closing also focused on whether Repman acted in self-defense. He argued that the evidence the State presented was insufficient to disprove Repman acted in self-defense. Significantly, Repman's attorney did not point to any evidence in closing to argue that Repman believed that Melvin had threatened Murl with the use of deadly force on the night the stabbing occurred.

On this record, Sergeant Cummins' answer to a leading and compound question about whether Repman told him he acted in self-defense and in defense of a third person is insufficient, by itself, to raise an issue of material fact regarding whether Repman was justified in using deadly force to protect Murl. Given the testimony about the argument and the altercation that occurred in the Lincks' home on the evening that Melvin was killed, we are confident the jury would have rejected any argument that Repman was acting to defend Murl even had the application section of the charge fully explained the steps the jury was required to take to resolve whether the State proved that Repman's use of deadly force was not justified. Therefore, we conclude the error, if any, caused no egregious harm. *See Villarreal*

*v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015) (noting that a conviction will not be reversed unless the defendant suffers actual rather than theoretical harm).

Because we have overruled Repman's sole issue, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 15, 2017
Opinion Delivered March 7, 2018
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.