

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1319-19

### CARLOS LOZANO, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

**HERVEY, J., delivered the opinion of the unanimous Court.**

## O P I N I O N

The question in this case is whether Appellant, Carlos Lozano, was egregiously

harmed by erroneous self-defense instructions when he was not entitled to deadly force

self-defense instructions in the first place. We answer that question no and will reverse

the judgment of the court of appeals.

## BACKGROUND

### a. Facts

In the early morning hours of September 26, 2015, Appellant shot and killed Jorge Hinojos in the parking lot outside Pockets Billiards and Fun (Pockets) in El Paso. Appellant went to Pockets to meet Fernanda Avila, whom he was dating at the time. A few hours after they arrived, Appellant and Avila sat with some of Appellant's coworkers. Avila testified that she told the manager when they joined the group to cut her and Appellant off because she did not want Appellant to keep drinking. According to people in the group, Appellant was in a good mood until he noticed that one of the guys at the table had been talking to Avila, at which point he got angry. One person testified that Appellant said "something about that if [the guy] didn't stop then there would be something like blood." Two coworkers, one of whom was talking to Avila, left because of the escalating situation. Avila testified that she went to the restroom when Pockets was closing at 2:00 a.m., then walked outside. She thought that Appellant had already left, but he was in his truck and started flashing his truck headlights at her. She said Appellant wanted to talk to her, but she left in her car because she did not want to talk to him.

Jorge Hinojos, his girlfriend Diana Ruiz, and their friend Carolina Rocha went to Pockets the same night. They arrived in Carolina's car around midnight. While they were there, they ran into three of Carolina's friends—David Torres, Carlos, and Chrystyan.[1] The group sat together and stayed until closing. Like Avila, Carolina went to the restroom, then met Jorge and Diana outside. They walked to one of Carolina's friend's

[1]The record does not show the last names of Carlos and Chrystyan.

car to make plans for later. After meeting at Carolina's friend's car, Carolina continued walking to her car. According to Diana and David, when Carolina began crossing the parking lot, "she didn't see that there was a truck driving very fast that almost r[a]n her over." Carolina said that she was scared because the truck was "very close" to her when she noticed the lights, but she was distracted because she was texting. Once Appellant stopped the truck, Applicant rolled down the passenger-side window but did not say anything. Diana testified that "[h]e only stared at us, and we started telling him to be careful. And the boys started, like, telling him, like, 'What were you thinking? Be careful.'" Carolina continued walking past the passenger side of the truck over to the driver's side. Appellant rolled down the driver's-side window and stared at Carolina in an "ugly" way before turning back to stare at Diana; Carolina walked away. Torres asked Appellant "in a good way" to leave because Jorge, who was dating Diana, was getting agitated by Appellant's staring at her, but Appellant ignored Torres. Jorge then threw a full beer can through the open passenger-side window. Diana said that the can "exploded," spilling beer everywhere. Torres testified that he then saw Appellant get a backpack from the backseat of his truck, pull out a gun, and point it in the direction of the open passenger window. According to Torres, Jorge did not see the gun because by the time Appellant removed the gun from his backpack, Jorge had already begun to run around the truck to the open driver's-side window, where he punched Appellant. Diana and Carolina said that Jorge punched Appellant once. Carolina did not think Jorge hit

Appellant because he was "short" and the truck was "very high," but Torres testified that he thought Jorge punched Appellant two or three times. When Jorge punched Appellant through the window, Appellant turned towards Jorge and shot him three times, killing him.

Doctor Mario Rascon, the Chief Medical Examiner for El Paso County, performed the autopsy. He testified that he found six wounds from three gunshots, as well as some evidence of blunt force injury.[2] According to him, the first bullet entered Jorge's chest and exited his back, the second hit Jorge's upper-left arm, and the third hit Jorge's upper-left torso, causing a fatal aortic tear. Dr. Rascon testified that it is "extremely unlikely" that a person who sustained such an injury would survive, especially Jorge since his tear was "extensive."

### b. Procedural History

On January 21, 2016, Appellant was indicted for murder.[3] TEX. PENAL CODE

---

[2]There was a ½ inch purple contusion on the surface of Jorge's left ankle, and a 1/8 inch superficial, linear, red abrasion on the bottom surface of the right wrist.

[3]The indictment alleged that Appellant,

Paragraph A
did then and there intentionally and knowingly cause the death of an individual, namely, Jorge Hinojos by shooting Jorge Hinojos,

Paragraph B
did then and there, with intent to cause serious bodily injury to an individual, namely Jorge Hinojos, commit an act clearly dangerous to human life, to wit: shooting Jorge Hinojos, that caused his death,

Paragraph C

§ 19.02(b)(1), (b)(2). The State abandoned paragraphs C and D before trial. Appellant was found guilty, and the trial court sentenced him to 25 years' confinement. Appellant appealed, arguing that the evidence was legally insufficient and that he was egregiously harmed by "duty to retreat" instructions that were erroneously included in the jury charge when a defendant no longer has a general duty to retreat. The court of appeals held that the evidence was legally sufficient, but it agreed with Appellant that the "duty to retreat" instructions caused him egregious harm and warranted a new trial. *Lozano v. State*, No. 08-17-00251-CR, 2019 WL 5616975 (Tex. App.—El Paso Oct. 31, 2019) (not designated for publication). The State subsequently filed a petition for discretionary review in this Court, which we granted, asking whether,

> The Eighth Court of Appeals erred in its preliminary holding that Appellant was entitled to jury instructions on the use of deadly force in self-defense

---

did then and there commit or attempt to commit the felony offense of Aggravated Assault by intentionally or knowingly causing bodily injury to Jorge Hinojos by shooting Jorge Hinojos with a firearm, and did then and there use or exhibit a deadly weapon during the commission of the assault, to wit: a firearm, and while in the course or in furtherance of the commission or attempted commission of said Aggravated Assault did then and there commit an act clearly dangerous to human life, to wit: shooting Jorge Hinojos with a firearm, and did thereby cause the death of an individual, namely Jorge Hinojos,

Paragraph D
did then and there commit or attempt to commit the felony offense of Aggravated Assault by intentionally or knowingly threatening Jorge Hinojos with imminent bodily injury and did then and there use or exhibit a deadly weapon during the commission of the assault, to wit: a firearm, and while in the course or in furtherance of the commission or attempted commission of said Aggravated Assault did then and there commit an act clearly dangerous to human life, to wit: shooting Jorge Hinojos with a firearm and did thereby cause the death of an individual, namely Jorge Hinojos

because there was no evidence presented from any source of Appellant's subjective state of mind at the time of the shooting, that is, whether he was in immediate apprehension or fear that the deceased was about to kill or seriously injure him at the time he shot the deceased, such that Appellant was not entitled to any self-defense instructions. Therefore, any errors in the self-defense instructions actually submitted did not result in egregious harm because Appellant was not entitled to the instructions in the first place.

Because we conclude that Appellant was not egregiously harmed, we will reverse the judgment of the court of appeals.

## JURY CHARGE ERROR

Claims of jury charge error are reviewed under the two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). First, a reviewing court must determine if there is jury charge error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). Second, if there is, then a harm analysis must be conducted. *Id.* There are two different standards of review under which to assess harm depending on whether the defendant timely objected to the erroneous charge. *Almanza*, 686 S.W.2d at 171 (op. on reh'g). If there was a timely objection, the record need show only "some harm." *Id.* If there was not a timely objection, the record must show "egregious harm." *Id.* To determine if the jury charge egregiously harmed the defendant, we examine the record as a whole, including the entire jury charge, the evidence, the contested issues, and the arguments of counsel, and anything else in the record that informs our analysis. *Id.* In examining the evidence, reviewing courts must consider "the plausibility of the evidence raising the defense." *Villarreal v. State*, 453 S.W.3d 429, 436

(Tex. Crim. App. 2015). Egregious harm exists if the error affects the very basis of the defendant's case, deprives him of a valuable right, or vitally affects a defensive theory. *Ngo*, 175 S.W.3d at 750. The record must bear out that Appellant suffered actual harm, not theoretical harm, and neither party has burden to show harm. *Id.*

## THE JURY CHARGE

The jury charge contains two erroneous instructions, both of which deal with the general duty to retreat, and because Appellant did not object to the erroneous charges, we review the errors for egregious harm. The jury charge states in relevant part that,[4]

> The defendant, Carlos Lozano, stands charged by indictment with the offense of murder, alleged to have been committed on or about the 26th day of September 2015, in the County of El Paso and State of Texas. To this charge the defendant pleads not guilty.

> \*     \*     \*

> Upon the law of self-defense, you are instructed that a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.

> The use of force against another is not justified:
> 1)     In response to verbal provocation alone:
> 2)     If the actor consented to the exact force used or attempted by the other;
> 3)     If the actor provoked the other's use or attempted use of unlawful force unless:
>           A)     The actor abandons the encounter or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the

---

[4]The "duty to retreat" language in the two erroneous instructions are bolded for the convenience of the reader.

encounter; and

    B)    The other nevertheless continues or attempts to use unlawful force against the actor;

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes the deadly force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force. The use of deadly force is presumed to be reasonable if the actor knew or had reason to believe that the person against whom the deadly force was used:

    A.)    Was unlawfully and with force entering, or was attempting to enter unlawfully and with force, the actor's occupied vehicle, or and with force removing or was attempting to remove the actor with force from the actor's vehicle and

    B.)    The actor did not provoke the person against whom the force was used and

    C.)    That the actor was not otherwise engaging in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

XI.

When a person is attacked with unlawful deadly force, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, by one or more persons, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury then the law excuses or justifies such person in resorting to deadly force by any means at his command to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack, and it is not necessary that there be an actual attack or attempted attack as a person has a right to defend his life and person from apparent danger as fully and to the same extent as he would had the danger been real, provided that he acted upon a reasonable apprehension of danger, as it appeared to him from his standpoint at the time, and that he reasonably believed such force was immediately necessary to protect himself against the other person's or assailants' use or attempted use of unlawful deadly force.

\*       \*       \*

Now if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant, Carlos Lozano, did shoot Jorge Hinojos with a firearm as alleged, but you further find from the evidence that, viewed from the standpoint of the defendant that his life or person was in danger and there was created in his mind a reasonable expectation of fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Jorge Hinojos or others, if any, and that acting under such apprehension, he reasonably believed that the use of deadly force on his part was immediately necessary to protect him against Jorge Hinojos or others', if any, use or attempted use of unlawful deadly force, and he shot the said Jorge Hinojos and that **a reasonable person in defendant's situation would not have retreated**, then you should acquit the defendant on the grounds of self-defense; or if you have a reasonable doubt as to whether or not the defendant was acting in self-defense on the occasion and under the circumstances, then you should give the benefit of the doubt to defendant and find him not guilty. (Verdict Form A)

XIV.

If you find from the evidence beyond a reasonable doubt (1) that at the time and place in question the defendant did not reasonably believe that he was in danger of death or serious bodily injury; (2) that **a reasonable person in defendant's situation, at such time and place, would have retreated** before using deadly force against Jorge Hinojos; or (3) that defendant, under the circumstances, did not reasonably believe that the degree of force actually used by him was immediately necessary to protect himself against Jorge Hinojos or others, if any, use or attempted use of unlawful deadly force, if any, as viewed from defendant's standpoint, at the time, then you must find against the defendant on the issue of self-defense.

\*       \*       \*

Before 2007, the deadly-force self-defense statute provided for a general duty to retreat, but that duty was removed from the statute effective September 1, 2007, and

"stand your ground" provisions were added.[5] *Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011). Since then we have explained, the inclusion of a "general duty to retreat" instruction is erroneous and constitutes an improper comment on the weight of the evidence. *Id.*

## HARM

### a. Arguments

The State argues that the erroneous self-defense instructions could not have egregiously harmed Appellant because, despite being erroneous, they were nonetheless favorable to Appellant, and he was not entitled to a self-defense charge in the first place. The State asserts that self-defense is only raised by the evidence if the record shows that (1) a defendant experienced apprehension or fear of being the recipient of unlawful use of force from another, and (2) the defendant's subjective apprehension or fear was objectively reasonable. According to the State, there is no proof of the former. Appellant responds that a "prima facie case of reasonable fear of serious bodily injury or death by [Appellant] based on the totality of the circumstances was clearly there" and that he was egregiously harmed even if he was not entitled to self-defense instructions because the

---

[5]The old "duty to retreat" instruction required the jury to find that "a reasonable person in the actor's situation would not have retreated . . . ." before using deadly force. TEX. PENAL CODE § 9.32(a)(2) (2006). The current "stand your ground" amendments provide that an actor has no duty to retreat if the actor had a right to be present where the deadly force was used, did not provoke the person against whom deadly force was used, and was not engaged in criminal activity at the time. *Id.* § 9.32(c) (2006). The other amendment states that a jury may not consider a person's failure to retreat if he had no duty to retreat. *Id.* § 9.32(d) (2006).

instructions "sent the jury on an incorrect factual and legal wild goose chase... thus compounding the error and the egregious harm."

## b. *Almanza*

### 1. Entirety of the Jury Charge

We conclude that Appellant was not egregiously harmed. While the jury charge might weigh in favor of finding egregious harm because the "general duty to retreat" instructions were indisputably erroneous, and the misstatements of that law were not clarified elsewhere in the charge, the other *Almanza* factors also weigh against him. Further, the jury charge factor only slightly weighs in favor of an egregious-harm finding here where there is no evidence that Appellant acted in self-defense with his use of deadly force when he shot and killed Jorge. *See Villarreal*, 453 S.W.3d at 436 (weight of jury charge factor depends on the plausibility of a defendant's self-defense evidence).

### 2. State of the Evidence and Contested Issues: Appellant Was Not Entitled to a Charge on Self-Defense

Self-defense is "law applicable to the case" and must be included in the jury charge if raised by the evidence. *Allen v. State*, 253 S.W.3d 260, 267 (Tex. Crim. App. 2008). "A defensive issue is raised by the evidence if there is sufficient evidence to support a rational jury finding as to each element of the defense." *Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (citing *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007)). In determining whether self-defense is raised, we do not consider the strength of the evidence, whether its contested, its credibility, or the ultimate

viability of the defense. *Id.*

Here, the issue is deadly force, not regular self-defense. According to Section 9.31 of the Penal Code (the non-deadly force self-defense statute), a person is justified in using force against another when and to the degree that person reasonably believes the force is immediately necessary to protect himself against another person's use or attempted use of unlawful force. TEX. PENAL CODE § 9.31(a). Under Section 9.32(a), a person is justified in using deadly force if he would be justified in using force under Section 9.31, and he reasonably believes that deadly force is immediately necessary to protect himself against another's use or attempted use of deadly force. *Id.* § 9.32(a)(2). The "reasonably believes" language contains subjective and objective components. *See Werner v. State*, 711 S.W.2d 639, 645 (Tex. Crim. App. 1986). A defendant must subjectively believe that another person used or attempted to use unlawful force (Section 9.31) or deadly force (Section 9.32) against the defendant and that the defendant's use of unlawful or deadly force in response was immediately necessary. *See Semaire v. State*, 612 S.W.2d 528, 530 (Tex. Crim. App. 1980). Second, a defendant's subjective belief must be reasonable.[6] A reasonable belief is one held by an "ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE § 1.07(a)(42).

---

[6]TEX. PENAL CODE § 9.32(a)(2); *Werner*, 711 S.W.2d at 645 (self-defense test "assumes that a defendant may act on appearances as viewed from his standpoint, . . . [but] the test also assumes the "ordinary prudent man test of tort law"); *see Braughton v. State*, 569 S.W.3d 592, 618 (Tex. Crim. App. 2018) (Keller, P.J., dissenting) ("The phrase 'reasonably believes' signifies both that the actor actually believes and that the actor's actual belief is reasonable.").

In certain situations, an actor's subjective belief is presumed reasonable,

> (b)  The actor's belief under Subsection (a)(2) that the deadly force was immediately necessary as described by that subdivision is presumed to be reasonable if the actor:
>
> > (1)  knew or had reason to believe that the person against whom the deadly force was used:
> >
> > > (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
> >
> > > \*        \*        \*
> >
> > (2)  did not provoke the person against whom the force was used; and
> >
> > (3)  was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used.

*Id.* § 9.32(b). By its own terms, the presumption applies under Section 9.32(b) only if the defendant first harbors a subjective belief that the use of deadly force was immediately necessary to defend himself from another's use or attempted use of deadly force. *Id.* ("The *actor's belief* . . . that the deadly force was immediately necessary as described by that subdivision *is presumed to be reasonable* if the actor . . . .") (emphasis added). That is consistent with a grammatical analysis of the statutory language. However, Section 9.32(b) also adds the additional hurdles that (1) an actor must know or have reason to believe that the person against whom the deadly force was used unlawfully and with force entered the actor's occupied vehicle, (2) the actor did not provoke the person against

whom the force was used, and (3) the actor was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used. *Id.* A case can be made that Appellant cannot overcome these additional requirements. Evidence not only indicates angry, drunken behavior on Appellant's part, but also contested testimony of high-speed driving toward Carolina and the brandishing of a weapon, both of which might be considered provocation, and neither of which are below a Class C misdemeanor regulating traffic at the time the force was used.

The court of appeals focused on only the "ordinary and prudent person" standard and concluded that the presumption of reasonableness likely applied. It is not clear whether it did not analyze both issues or whether it presumed that, if an ordinary and prudent person would have believed that the use of deadly force was immediately necessary, a defendant must have believed the same. We agree with the court of appeals that a jury could find the presumption of reasonableness applicable in this case, but we do not agree that satisfaction of the "ordinary and prudent person" standard obviates the need for the evidence to show that a defendant actually believed that the use of deadly force was immediately necessary. Typically, the "ordinary and prudent person" standard is meant to operate as a limitation on defendants who harbor unreasonable beliefs that the use of deadly force was immediately necessary. But it can also operate as a limitation in the other direction. That is, it prevents a jury from acquitting a defendant based on self-

defense when the defendant did not believe that he acted in self-defense. We now turn to whether the evidence, no matter how weak or contradicted, supports the conclusion that Appellant believed that the use of deadly force was immediately necessary.

Like a culpable mental state, a person's belief, absent direct evidence, generally must be inferred from the circumstances of the case. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). And evidence of self-defense need not come from the defendant. It can be raised by other witnesses's testimony about the defendant's acts and words at the time of the offense. *See Smith v. State*, 676 S.W.2d 584, 585 (Tex. Crim. App. 1984). The relevant evidence in the light most favorable to Appellant shows that,

- He was driving his truck in the parking lot of Pockets and stopped when Carolina almost walked in front of his truck while she was crossing the lot,

- Appellant lowered the passenger-side window and stared at Diana and Carolina,

- Some of the people with Jorge told Appellant to be more careful,

- When Carolina walked past the truck, Appellant lowered the driver's-side window and stared at her,

- When Carolina walked away, Appellant turned back to the open passenger-side window and started staring at Diana again,

- Jorge got mad and threw an almost-full beer can through the open passenger-side window of Appellants truck,

- The almost-full beer can "exploded" in Appellant's truck,

- Appellant brandished a firearm and pointed it at the passenger-side window where the beer came from,

- Jorge ran around the truck to the driver's-side window and punched Appellant multiple times, and

- Appellant turned towards Jorge and shot him three times.

Appellant never spoke during the encounter or about the altercation following the encounter, and there is no evidence about Appellant's demeanor that is favorable to him. Although the evidence shows that Appellant brandished a firearm in response to Jorge throwing an almost-full beer can through the passenger-side window, which "exploded," there is no evidence as to why Appellant brandished the firearm. It might have been because he believed that he needed to defend himself with deadly force, but he also might have overreacted in the moment or even brandished the firearm to intentionally escalate the situation. The same is true when Jorge ran around the truck and punched Appellant through the open driver's-side window. It might be that Appellant believed that he was justified in using deadly force against Jorge, but no evidence supports that conclusion. Also, the fact that Appellant shot Jorge three times could be relevant to whether the use of deadly force was justified depending on the context. For example, Appellant might have shot Jorge three times because he thought that he was fighting for his life, and it was either him or Jorge. Or, he might have shot Jorge once in self-defense, then continued shooting even though he knew Jorge was no longer a threat. However, we simply do not know on this record why Appellant shot Jorge three times. Appellant argues that the evidence shows that he was the victim of a "coordinated attack by a group of experienced

predators," which was sufficient for a jury to infer that Appellant was in "reasonable fear of serious bodily injury based on disparity of numbers." But the evidence does not support that there were multiple aggressors. We conclude that there was no egregious harm because deadly force self-defense was not raised by the evidence. *See Villarreal*, 453 S.W.3d at 436 (implausible self-defense evidence strongly favors no finding of egregious harm).

### *3. Arguments of the Parties and Other Relevant Information Revealed by the Record*

The court of appeals discussed the arguments of the parties at length, but we need not do so. Erroneous arguments of counsel about a defensive issue not raised by the evidence do not weigh in favor of finding egregious harm because the error benefitted the defendant. We also note that, although the jury was wrongly charged on self-defense, Appellant was still provided with the windfall of a possible acquittal on that basis, and it is evident that the jury considered doing so given that it sent a note to the judge asking about the presumption of reasonableness and what it means to "enter." Further, although erroneous, the self-defense charge increased the State's burden of proof, requiring it disprove self-defense beyond a reasonable doubt even though it was not raised by the evidence. We hold that Appellant was not egregiously harmed by the erroneous "duty to retreat" instructions because they did not affect the very basis of the defendant's case, deprive him of a valuable right, or vitally affect a defensive theory raised by the evidence.

### CONCLUSION

Because we conclude that the court of appeals erred in finding that the erroneous "duty to retreat" jury instructions caused Appellant egregious harm, we reverse its judgment.

Delivered: October 6, 2021

Publish