**Affirmed and Memorandum Opinion filed October 26, 2021.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-20-00258-CR

**KAILA ALEXINE NELSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1577901**

## MEMORANDUM OPINION

A jury found Kaila Alexine Nelson guilty of the offense of capital murder, and the trial court assessed her punishment at life imprisonment without parole. Tex. Penal Code Ann. §§ 19.03(a)(2) (capital murder), 12.31(b) (punishment for capital felony). In two issues, appellant contends that the trial court reversibly erred by not sua sponte instructing the jury to consider whether two witnesses who testified at trial were accomplice witnesses. Concluding that the two witnesses were not accomplice witnesses, we affirm.

# I.  BACKGROUND

In late 2017, the complainant, Dequan Anderson, arrived at a Dollar General store in north Houston for his shift. When he arrived, he was assigned the task of taking money from the store register for deposit in a bank. Approximately $2,800 was placed inside a money bag, and then the money bag was placed inside a company-branded tote bag. As complainant got into his vehicle, an assailant ran to the vehicle and attempted to grab the bag of money. Complainant pulled the bag away and attempted to drive away. The assailant followed complainant's vehicle and shot at the vehicle, until complainant crashed. The assailant ran over to the vehicle after it crashed, broke the driver's window and took the tote bag. Complainant was shot several times and died of his injuries.

The assailant left the scene and got inside another vehicle parked outside an adjacent apartment complex. Security footage from the apartment complex and eyewitness testimony led police to the "getaway" vehicle and Kevin Berry, the person who was leasing the vehicle. Berry, in turn, informed police that he was paid to drive two women to the apartment complex next to the Dollar General that day. The address at which Berry picked up the two women corresponded to the same apartment complex at which Dinesha Jackson, an assistant manager at the Dollar General store, lived.

Jackson was a childhood friend of appellant's girlfriend, Jamesha Robinson. Appellant and Robinson, though residents of Atlanta, were visiting Houston at the time of the murder and staying with Jackson. Police also learned that Jackson was not scheduled to work on December 17 but volunteered to work. As the assistant manager of the store, she assigned complainant to make the deposit even though another employee had planned to handle the deposit.

The murder weapon—a gun—was never located. Multiple eyewitnesses

described the shooter as a "Hispanic male." However, appellant's fingerprint was found on complainant's vehicle, and appellant was further linked to the murder through her connection to Jackson as well as her cell-phone records. The cell-phone records not only placed appellant, Robinson, and Berry in the general proximity of the Dollar General store at the time of the robbery and murder, but the records reflect extensive text communication between Jackson and appellant in the hour before the robbery and murder. Jackson was charged as a co-defendant.

Appellant was arrested in Atlanta approximately two months later. At trial in February 2020, the State called Berry and Robinson to testify against appellant. Both Berry and Robinson testified pursuant to an immunity agreement.

## II.    ANALYSIS

Appellant acknowledges that she did not object to the lack of an accomplice-witness instruction in the jury charge with respect to the testimony of Berry and Robinson. However, appellant asserts that the trial court should have instructed the jury sua sponte because the evidence raised a fact issue as to whether Berry and Robinson were accomplices. She contends that the trial court's error egregiously harmed her because "rational jurors would have found the State's case significantly less persuasive had they been told that the accomplices' testimony could not be accepted without corroboration."

### A.    Standard of Review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). When analyzing claimed jury charge error, we utilize a two-pronged test. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc). The first prong requires us to

3

determine whether error exists. *See Ngo*, 175 S.W.3d at 743. If no error is found, then the analysis ends; however, if charge error is found, the error is analyzed for harm. *See id.*

The degree of harm necessary to warrant a reversal depends on whether the accused objected to the jury charge, and thereby preserved the error. *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171. If the error was preserved by a timely objection, we review the record to determine if the error caused the accused "some harm." *Ngo*, 175 S.W.3d at 743; *Almanza*, 686 S.W.2d at 171. However, if no objection was lodged, as appellant concedes here, we review the unpreserved jury charge error for egregious harm. *Almanza*, 686 S.W.2d at 171. Egregious harm is actual, rather than theoretical, and must be of such a nature that it deprived the accused of a fair and impartial trial or otherwise vitally affected the accused's defensive theory at trial. *See Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). In making an egregious-harm determination, we examine: (1) the entire charge; (2) the state of the evidence, including contested issues and the weight of the evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *See Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008); *Almanza*, 686 S.W.2d at 171. However, because we find no jury-charge error in this case, we need not perform the egregious-harm analysis.

## B.    Applicable Law

Under Code of Criminal Procedure article 38.14, a criminal conviction may

not be based on the testimony of an accomplice witness unless the testimony is "corroborated by other evidence tending to connect the defendant with the offense committed." Tex. Code Crim. Proc. Ann. art. 38.14. The purpose of the accomplice-witness instruction is to remind the jury that it cannot use the accomplice's testimony to convict the defendant unless there also exists some non-accomplice testimony or evidence tying the defendant to the offense. *Cocke v. State*, 201 S.W.3d 744, 747 (Tex. Crim. App. 2006).

A witness is an accomplice only if he or she participates in the crime with the defendant, taking "an affirmative act . . . to assist in the commission of the [crime]" before, during, or after the commission of the crime, with the required culpable mental state for the crime. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). Mere presence at the scene of the crime does not render a witness an accomplice. *Id*. at 498; *see Cocke*, 201 S.W.3d at 748. Nor is a witness an accomplice merely because he knew of the crime and failed to disclose it or even concealed it. *Druery*, 225 S.W.3d at 498. There must exist evidence sufficient to connect the witness to the criminal offense as a "blameworthy participant." *Cocke*, 201 S.W.3d at 748 (quoting *Blake v. State*, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998)).

"A witness may be an accomplice either as a matter of law or as a matter of fact; the evidence in a case determines what jury instruction, if any, needs to be given." *Cocke*, 201 S.W.3d at 747. "Whether an accomplice-witness instruction is justified, therefore, requires a case-specific and fact-specific inquiry." *Id*. at 748. "When the evidence clearly shows (i.e., there is no doubt) that a witness is an accomplice as a matter of law, the trial judge must instruct the jury accordingly." *Smith v. State,* 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). A witness is an accomplice as a matter of law in the following situations: (1) the witness has been

5

charged with the same offense as the defendant or a lesser-included offense; (2) if the State charges a witness with the same offense as the defendant or a lesser included of that offense, but dismisses the charges in exchange for the witness's testimony against the defendant; and (3) when the evidence is uncontradicted or so one-sided that no reasonable juror could conclude that the witness was not an accomplice. *Ash v. State*, 533 S.W.3d 878, 886 (Tex. Crim. App. 2017). When the evidence is conflicting and it remains unclear whether the witness is an accomplice, the trial court should allow the jury to decide the issue as a matter of fact under instructions defining the term "accomplice." *Druery*, 225 S.W.3d at 498–99; *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). Finally, when the evidence clearly shows that a witness is not an accomplice, the trial judge is not obliged to instruct the jury on the accomplice-witness rule as a matter of law or fact. *Smith*, 332 S.W.3d at 440.

There is no indication in the record that Berry and Robinson were ever charged with the same offense as appellant. In her briefing on appeal, appellant does not contend that Berry and Robinson were accomplices as a matter of law, and instead argues the evidence was conflicting and raised the issue of whether Berry and Robinson were accomplices as a matter of fact. *See Ash*, 533 S.W.3d at 886 (witness is accomplice as matter of law if no reasonable juror could conclude that witness was not accomplice).

## C.     Kevin Berry was not an accomplice

Appellant argues that the following evidence at trial raised a fact issue of whether Berry was an accomplice as a matter of fact: (1) Berry texted with appellant about plans to drive her and wait for her to pick up some money; (2) Berry saw appellant was carrying a gun when he picked her up; (3) Berry waited in the vehicle and moved the vehicle into the adjacent apartment complex

after hearing gunshots; (4) Berry took appellant and Robinson to the bus later that day; and (5) Berry deleted text messages between himself and appellant. Appellant also cites to the fact that Berry had a prior robbery conviction. However, appellant engages in little discussion of how this evidence qualifies Berry as an accomplice.

On the day of the murder, appellant contacted Berry via text and asked if he could drive her somewhere that day. She indicated that it might involve waiting around and that she would pay him extra for that. The text messages, as well as Berry's testimony, reflect that appellant needed to be picked up by 12:30 p.m. so she could be somewhere by 1:00 p.m. She told Berry via text that she could not be late. In her text messages, appellant neither indicated where she needed to be driven, nor made any statement that would indicate she planned to commit a crime. Berry later picked up appellant and Robinson and drove them to an apartment complex adjacent to Dollar General. Appellant got out, leaving Berry and Robinson in the vehicle. She walked to the Dollar General. Berry had initially parked on the street, but then moved his vehicle to avoid attention. He never saw the commission of the crime. He recalls that appellant returned to the vehicle out of breath and carrying a bag of money. Berry drove appellant and Robinson back to the pickup location, and then later that day drove the pair to the Greyhound station so they could catch a bus back to Atlanta.

Given that an "accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state," there is no evidence, nor does appellant cite to any, that Berry participated with the required culpable state. *See Druery*, 225 S.W.3d at 498. Berry's testimony, supported by the text messages in the record, does not reflect any knowledge on his part that he was participating or assisting in a robbery or a murder. All the evidence at trial established that Berry knew—before dropping

7

appellant outside the apartment complex adjacent to the Dollar General—that appellant needed to pick up some money and she had a gun. Given Berry's testimony that he had previously and uneventfully driven appellant to Wal-Mart to run an errand when appellant had her gun, the fact that appellant again brought her gun with her on the day of the murder does not automatically make Berry an accomplice or impute to Berry knowledge that appellant planned to rob the Dollar General. There is no evidence Berry was aware he was participating in, soliciting, encouraging, or aiding a robbery or murder.

Though Berry deleted text messages at appellant's request and drove her to the bus station later that day to leave town, these acts do not make him an accomplice. *See id.* at 499–500 (concluding that two witnesses in murder prosecution were not accomplices for purposes of accomplice-witness rule when one assisted in disposal of decedent's body and gun and both were paid with cash stolen from decedent). Because the evidence does not raise a fact issue of whether Berry was an accomplice to the offense of capital murder (or any lesser-included charges), we conclude that the trial court did not err in omitting an accomplice-witness instruction regarding Berry from the jury charge.

We overrule appellant's issue 1.

## D.     Jamesha Robinson was not an accomplice

Appellant also argues that the evidence raised the question of whether she was entitled to an accomplice-witness instruction as to the testimony of Robinson. She asserts that the following evidence at trial raised a fact issue of whether Robinson was an accomplice as a matter of fact: (1) Robinson was the girlfriend of appellant; (2) Robinson was also staying with Jackson; (3) Robinson rode to Dollar General with her; and (4) and Jackson was her best friend.

8

There is no evidence in the record that Robinson engaged in any affirmative act to promote the robbery or murder. The evidence cited by appellant only reflects that Robinson was with her before the commission of the crimes and rode with her to Dollar General. But that is not evidence of any culpable mental state on Robinson's part. Though Robinson may have known of or suspected appellant's plans, that fact alone does not make Robinson an accomplice. *See Druery*, 225 S.W.3d at 500. She may also have suspected or learned that appellant committed a crime when appellant returned with blood on her arm, screaming "I shot." However, the evidence cited by appellant does not establish any conflict in the evidence or doubt as to whether there was any affirmative act on the part of Robinson to assist in the commission of the charged offense. *Id*. at 499; *see Paredes*, 129 S.W.3d at 537–38 ("There is no evidence that Priscilla was in any way involved in the planning of the murders. Although she may have suspected that foul play would occur when Torres arrived at her house, there is no evidence suggesting that she assisted in the preparation for or planning of the murders. . . . There is no conflicting evidence or doubt on the question of Priscilla's complicity in the murders."). Therefore, we conclude that the evidence at trial did not raise a fact issue regarding whether Robinson was an accomplice.

We overrule appellant's second issue.

### III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.


/s/    Charles A. Spain
Justice

Panel consists of Justices Jewell, Spain, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).