**Opinion filed December 30, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00174-CR

_____

## WILLIAM CLIFFORD GOBLE, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-20-0197-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, William Clifford Goble, Jr., was indicted for the murder of David Young.  TEX. PENAL CODE ANN. § 19.02(b)–(c) (West 2019).  A jury convicted Appellant of the charged offense and assessed his punishment at thirty-eight years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice and a $10,000 fine.  The trial court sentenced Appellant accordingly.  In his

sole issue on appeal, Appellant contends that the trial court erred when it included in its charge a general duty-to-retreat instruction that advised the jury that a person is justified in using deadly force in self-defense "if a reasonable person in the Defendant's situation would not have retreated." We affirm.

## I. *Factual Background*

The evidence presented at trial included the testimony of several witnesses as well as video footage captured by neighborhood security cameras.

The murder of David Young occurred during an incident between Appellant, David Young, David's son (Jeffrey Young), and Jeffrey's girlfriend (Izabel Duncan). The incident apparently arose from Jeffrey and Izabel's use of a dirt bike on the streets of the residential neighborhood where both Appellant and David lived. Jeffrey and Izabel were riding a dirt bike at a nearby park, with David present. Jeffrey and Izabel decided to race David back to his house by riding the dirt bike through the nearby neighborhood.

While returning to David's house, Jeffrey and Izabel encountered Appellant, who was pulling out of his driveway in his pickup; they rode the dirt bike onto the sidewalk to avoid being struck by Appellant's pickup. Shortly after Jeffrey and Izabel arrived at David's house, Appellant drove up, cursed at them, and flipped them off before driving away.

A short while later, Jeffrey and Izabel "cruised" around the neighborhood on the dirt bike and circled around past Appellant's house before returning to David's house. After that, Appellant drove by David's house again, this time writing down the address before driving away. Jeffrey and Izabel again returned to Appellant's house, this time in Jeffrey's pickup, to "see what the issue [wa]s." As Jeffrey exited his pickup, which was parked in front of Appellant's house, he saw Appellant lift

his shirt and place his hand on a pistol that was holstered at his hip. Seeing this, Jeffrey got back in his pickup and the couple drove back to David's house.

Upon arriving back at David's house, they told David what had just occurred. David got into Jeffrey's pickup and the three of them drove back to Appellant's house. When they arrived, they saw Appellant standing in his neighbor's carport. Appellant initially ducked behind the neighbor's vehicle, but then laughed as he stepped back into view. David exited Jeffrey's pickup and moved toward Appellant quickly; witnesses described his pace as "hurried" or as "speed jogging." After David stepped onto Appellant's lawn, Appellant drew his pistol and pointed it at David. David stepped back onto the sidewalk, off of Appellant's lawn. According to witness testimony, David appeared to be removing his cell phone from his pocket when Appellant shot him in the chest. David died from the gunshot wound.

When police arrived at the scene, Appellant was placed into a police vehicle. While inside the vehicle, the in-vehicle camera and audio system recorded Appellant talking aloud to himself; he said: "F-----g dropped his s--t like a dog." After law enforcement had conducted their investigation, it was determined that David had a blood alcohol level of 0.175 and that Appellant had a blood alcohol level of 0.095. Appellant's blood sample also tested positive for marihuana.

Officer Carlos Chavez of the Odessa Police Department testified as an expert on the subjects of tactical shooting, firearms, and self-defense. He testified that, based on his observations of the security cameras that recorded the incident, Appellant's actions were not reasonable when he shot David. He further testified that it was a criminal offense for a person to possess a firearm while intoxicated.

Appellant testified that he saw the dirt bike several times during the day of the incident and that he yelled at the riders that the bike was not street legal; he also

3

claimed to have called the police. Later on, Appellant decided to determine the address of the bike riders so that he could inform the police. According to Appellant, he drove past David's house twice but could not see the address. People at David's house yelled at him, and he flipped them off. He drove by a third time and noted the address of the house. Appellant then returned to his house and was speaking with his neighbor when Jeffrey pulled up in his pickup. Jeffrey asked Appellant what his problem was, and Appellant patted his hip as a "subtle indication" that "something" was under his shirt. Jeffrey left the scene.

Later, Jeffrey returned in his pickup and Appellant said to his neighbor, "This is not going to be good." Appellant initially ducked behind the neighbor's vehicle because he knew the people in the pickup were looking for him. He saw David exit the pickup and start running at him. Appellant testified that, because of David's actions, he was in fear for his life. He testified that when David reached his lawn, Appellant drew his pistol. He recalled David backing up to the sidewalk when Appellant drew the pistol, but then he took two or three steps forward again—up Appellant's driveway. Appellant testified that he was afraid that David would break his "bones or neck" and he viewed David as an imminent threat. He also stated that he felt outnumbered and that he did not believe he could avoid the threat at that moment. According to Appellant, when he saw David pulling something from his pocket, he feared that it was a weapon. As a result, and in reacting to the situation, Appellant shot David.

## II. *Analysis*

There is no dispute that Appellant shot and killed David. The only question for the jury to determine was whether Appellant acted in self-defense. Appellant complains that the trial court erroneously included in its charge a general duty-to-

4

retreat instruction that advised the jury that a person is justified in using deadly force in self-defense "if a reasonable person in the Defendant's situation would not have retreated."

Appellate review of alleged charge error is a two-step process. *Alaniz v. State*, 648 S.W.3d 657, 660 (Tex. App.—Eastland 2022, no pet.) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)). First, we must determine whether charge error exists. *Id.* (citing *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015)). Second, if error exists, as it does here, we must then conduct a harm analysis to determine whether the error resulted in sufficient harm to require reversal. *Id.* at 660–61 (citing *Cortez*, 469 S.W.3d at 598; *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005)).

The State concedes, and we agree, that the complained-of instruction was erroneously included in the trial court's charge. *See* PENAL § 9.32(d). The complained-of instruction—the general "duty to retreat" instruction—has been abrogated. This language was statutorily repealed in 2007 and is now deemed to be an improper comment on the weight of the evidence. *Lozano v. State*, 636 S.W.3d 25, 31 (Tex. Crim. App. 2021); *Morales v. State*, 357 S.W.3d 1, 6 (Tex. Crim. App. 2011) (describing the statutory amendment); *see* PENAL § 9.32(d) ("[I]n determining whether an actor . . . reasonably believed that the use of deadly force was necessary, a finder of fact may not consider whether the actor failed to retreat.").

Because charge error exists, we must conduct the appropriate harm analysis. *See Alaniz*, 648 S.W.3d at 661 (citing *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021)) ("[W]hen the charge is inaccurate, the trial court errs, and the error is subject to a harm analysis."); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West

2007). Here, Appellant's trial counsel did not object to the submission of the erroneous instruction in the charge; therefore, Appellant must show "egregious harm" to obtain a reversal. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). As such, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

The Court of Criminal Appeals recently reiterated that, as in the case before us, an *Almanza* egregious harm analysis is required when an erroneous, unobjected-to, instruction is given that includes language that one has a "duty to retreat." *See Lozano*, 636 S.W.3d at 31–35 (holding that an erroneous "duty to retreat" instruction did not cause egregious harm). To determine if the error egregiously harmed Appellant, we examine the record as a whole, including (1) the entire jury charge, (2) the state of the evidence, including the contested issues, (3) the arguments of counsel, and (4) anything else in the record that may inform our analysis. *Almanza*, 686 S.W.2d at 171. Egregious harm exists if the error affects the very basis of Appellant's case, deprives him of a valuable right, or vitally affects a defensive theory. *Villareal*, 453 S.W.3d at 433; *Ngo*, 175 S.W.3d at 750. The record must show that Appellant suffered actual harm, rather than theoretical harm, as a result of the error; neither party bears the burden to show harm. *Villareal*, 453 S.W.3d at 433; *Ngo*, 175 S.W.3d at 750.

Appellant acknowledges that the trial court instructed the jury that Appellant did *not* have a duty to retreat if (1) he had the right to be present at the location, (2) he did not provoke the use of deadly force, and (3) he was not engaged in

criminal activity at the time the deadly force was used. However, the trial court also instructed the jury that, if Appellant did not meet those three criteria, he was entitled to claim self-defense *only* "if a reasonable person in [his] situation would not have retreated."

The State argued at trial that Appellant was not entitled to the statutory presumption of reasonableness in his use of deadly force against David because Appellant was intoxicated while in possession of a firearm, which was a criminal offense "above a Class C misdemeanor." The "no duty to retreat" statutory provisions that became effective in 2007 are not applicable when a defendant is otherwise engaged in criminal activity. Nevertheless, while "the failure to retreat may be considered in determining whether a defendant reasonably believed that his conduct was immediately necessary," it does not follow that the trial court must include a general "duty to retreat" instruction in its charge. *Morales*, 357 S.W.3d at 5; *see also Lozano*, 636 S.W.3d at 33.

Appellant reasons: the jury was instructed that, if it found that Appellant was not entitled to the presumption of reasonableness, he was only entitled to use deadly force against David "if a reasonable person in [his] situation would [not] have retreated." Appellant contends that he suffered egregious harm because the instruction erroneously informed the jury that, if it found Appellant was intoxicated at the time of the shooting, it should convict him unless no reasonable person would have retreated. We disagree.

Although the trial court included an improper general duty to retreat instruction in the charge, it also twice included the correct, current statutory language in the charge which states:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom

7

the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used, *is not required to retreat before using deadly force to defend himself or a third person*. If you find from the evidence that the Defendant was such a person, or if you have a reasonable doubt thereof, in determining whether the Defendant reasonably believed that the use of deadly force was necessary*, you may not consider whether the Defendant failed to retreat*.

(emphasis added). These correct statements of the law followed the erroneous instruction, adding a slight mitigating effect to the offending language. *See Finch v. State*, No. 05-15-00793-CR, 2016 WL 2586142, at *7 (Tex. App.—Dallas May 4, 2016, pet. ref'd) (mem. op., not designated for publication).

In considering the charge as a whole, we also observe that the self-defense instructions in the application portion of the charge correctly stated the law. There, the charge correctly instructed the jury on the application of the law of self-defense:

> [I]f you believe from the evidence beyond a reasonable doubt that . . . David Young was not using or attempting to use unlawful deadly force on WILLIAM CLIFFORD GOBLE, JR., and that the Defendant did not reasonably believe that deadly force . . . was immediately necessary to protect himself against the use or attempted use of unlawful deadly force, as viewed from his standpoint alone, then you will find against the defendant on this issue of self defense.

Importantly, the charge's application paragraph was silent as to any alleged requirement to retreat as a condition of self-defense. Rather, the application portion of the charge correctly required that, for Appellant to receive an acquittal based on a self-defense theory, the jury need only find that Appellant's use of deadly force was immediately necessary to protect himself against the use or attempted use of deadly force by David. Accordingly, when read as a whole and in proper context, the trial court's charge does not support a finding of egregious harm because of the single, isolated inclusion of repealed statutory language regarding a general duty to

8

retreat.  *See Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) ("Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious."); *Kuhn v. State*, 393 S.W.3d 519, 529 (Tex. App.—Austin 2013, pet. ref'd) ("Texas courts have repeatedly held that where the application paragraph of the charge correctly instructs the jury on the law applicable to the case, this mitigates against a finding that any error in the abstract portion of the charge was egregious.").

The state of the evidence also does not weigh in favor of egregious harm. Throughout the trial, the contested issue was whether Appellant's use of deadly force was reasonable.  At no point did the State assert, imply, or emphasize that Appellant had a duty to retreat.  In fact, the only mention of a duty to retreat was referred to by Appellant's trial counsel during his closing argument.  There, Appellant's trial counsel correctly stated that there is no duty to retreat.  This statement, if it had any effect, only further clarified for the jury that Appellant had no duty to retreat in connection with his claim of self-defense.

Based on this record, we conclude that Appellant did not suffer egregious harm.  The charge was relatively straightforward.  The single, offending instruction was not set apart in the charge or emphasized in any way.  It was mitigated by two subsequent statements in the same paragraph that correctly instructed the jury of the applicable law—self-defense was correctly defined, and the instruction did not mention a duty to retreat.  With the exception of Appellant's trial counsel correctly clarifying during his closing argument that Appellant had no duty to retreat, the evidence and counsel's closing arguments never mentioned whether Appellant, in fact, had a duty to retreat.  In this case, the evidence and the arguments of counsel focused exclusively on the reasonableness of Appellant's use of deadly force.

We hold that the trial court erred when it submitted a general duty-to-retreat instruction in its charge. However, based on this record, we conclude that the erroneous submission of this single, isolated reference of a general duty to retreat did not result in a level of egregious harm such that it affected the very basis of Appellant's case, deprived him of a valuable right, vitally affected his defensive theories, or deprived him of a fair and impartial trial. Accordingly, we overrule Appellant's sole issue.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

December 30, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.