

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-25-00160-CR

JOHN PAUL ORTEGA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 083519-E-CR, Honorable Timothy G. Pirtle, Presiding

April 9, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant John Paul Ortega appeals the judgment by which he was convicted of capital murder in connection with the death of Iliana Michelle Garza and the unborn child she was carrying at her death. He presents the Court with two issues concerning the trial court's charge to the jury. We affirm.

**FACTUAL BACKGROUND**

Appellant and Garza were in a volatile romantic relationship that began while Appellant was serving a fifteen-year prison sentence. The relationship continued when

Appellant was released in June 2022. In late November 2022, Appellant and Garza, then approximately five and one-half months pregnant with Appellant's son, met up in a convenience store parking lot to discuss their relationship issues.

Security camera footage partially captured their interaction that night. Appellant parked right next to Garza's vehicle, on her passenger side. Appellant approached Garza's vehicle and appeared to speak to Garza while he stood outside the passenger's side window. About two minutes later, he appeared to retrieve something from his own car. Appellant then opened Garza's front passenger door and seated himself inside the vehicle and closed the door. Appellant and Garza remained in her car for about thirteen minutes, their interaction within the vehicle not visible in the footage. Appellant suddenly exited Garza's vehicle, returned to his, and promptly backed out of his parking spot and left. In the few seconds it took for Appellant to leave, the footage shows, Garza opened her driver's side door and fell out of the car onto the pavement. She died at the scene, having been stabbed in the neck.

After Appellant attempted to elude police, police apprehended him and brought him in for interrogation. During this first interview, Appellant mostly denied having a weapon though he is heard saying something about a sharp object. He avoided sharing details of their last interaction but did recount to officers that the relationship was not a healthy one and that Garza had moved her belongings from their shared home that day. Garza, Appellant explained, was not "keeping it real" with him. He also expressed a vague sense of that day being the day something was going to happen. He told the interviewing officer that he always knew it was going to be him or her, seemingly referring to his sense that one would kill the other eventually.

During a second interview, two days later when officers went to execute a warrant to take Appellant's DNA sample, Appellant was considerably more hostile but remained mostly nonresponsive to questions about what had happened that night. At one point, he disputed that Garza was dead and explained that he had seen her after their interaction. Several times, he insisted on getting photographic confirmation that she was, in fact, deceased. He also suggested she may have stabbed herself in the neck and repeatedly denied having done anything to contribute to her death.

Ultimately, Appellant was charged with capital murder in association with the deaths of Garza and the unborn child she carried in utero. A Potter County jury found Appellant guilty of said charges, and he was sentenced to life imprisonment without the possibility of parole.

## SUFFICIENCY OF THE EVIDENCE

Because Appellant's second issue would afford the greatest relief if sustained, we address this issue first. *See Roberson v. State*, 810 S.W.2d 224, 225 (Tex. Crim. App. 1991) (en banc) (per curiam).

Appellant contends the evidence presented at trial was insufficient to support the jury's verdict as to the murder of the unborn child Garza was carrying, the child's death being essential to the offense of capital murder. That is, he maintains the evidence was insufficient to show that he intentionally or knowing caused the death of Garza's unborn child or that he was subjectively aware that his actions were reasonably certain to cause the result. A person commits capital murder if he intentionally or knowingly causes the death of more than one individual during the same criminal transaction. TEX. PENAL CODE

3

§§ 19.02(b)(1), 19.03(a)(7)(A). The definition of "individual" includes an unborn child, making the killing of a fetus a qualifying death for capital murder charges. *See id.* § 1.07(a)(26).

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A jury may infer intent or knowledge from any facts that tend to prove its existence, including acts, words, and conduct of the accused and the method of committing the crime. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

In reviewing the sufficiency of the evidence, we consider all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). We "defer to the jury's credibility and weight determinations because the jury is the 'sole judge' of witnesses' credibility and the weight to be given testimony." *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021) (quoting *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012)).

This Court has addressed this issue, explaining as follows:

"Lay people understand maternal death can cause fetal death." *In re C.M.M.*, 503 S.W.3d 692, 702 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A jury may infer that a defendant intends the natural consequences of his acts. *Herrera v. State*, 526 S.W.3d 800, 810 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). A jury also may reasonably infer

4

that a defendant who kills a woman the defendant knows to be pregnant is aware that killing the woman is reasonably certain to result in the death of the woman's unborn child. *See Estrada v. State*, 313 S.W.3d 274, 305 (Tex. Crim. App. 2010) (jury could reasonably infer defendant who strangled and stabbed pregnant woman knew his conduct was reasonably certain to cause unborn child's death); *Bonilla-Rubio v. State*, No. 02-23-00200-CR, 2024 Tex. App. LEXIS 7139, at *13 (Tex. App.—Fort Worth Oct. 3, 2024, no pet.) (mem. op., not designated for publication) (jury could reasonably infer that defendant was aware that shooting pregnant woman three times in her neck and leaving her to die was reasonably certain to cause unborn baby's death); *Eguia v. State*, 288 S.W.3d 1, 9–10 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (evidence sufficient to sustain capital-murder conviction where defendant stabbed visibly pregnant woman in her neck, causing death of woman and her unborn baby).

*Greenleaf v. State*, No. 07-24-00303-CR, 2025 Tex. App. LEXIS 9749, at *4–5 (Tex. App.—Amarillo Dec. 18, 2025, no pet.) (mem. op., not designated for publication).

Similarly, here, the record establishes that Appellant knew Garza was pregnant. He acknowledged as much during interviews with police and during his trial testimony. That being so, the jury could reasonably infer that Appellant was aware that killing Garza was reasonably certain to result in the death of the unborn child Appellant knew she was carrying. *See id.* at *5; *Eguia*, 288 S.W.3d at 10. We overrule Appellant's second issue.

### THE JURY CHARGE ON SELF-DEFENSE

The abstract portion of the jury charge included the following language on the use of deadly force in defense of self:

Under our law, a person is justified in using force against another when and to the degree that he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force. The use of force is not justified in response to verbal provocation alone.

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as set out above, and when he reasonably believes that such deadly force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force.

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.

"Deadly force" means force that is intended or known by the person using it to cause, or in the manner of its use or intended use is capable of causing[ ] death or serious bodily injury.

The defendant's belief that deadly force was immediately necessary is presumed to be reasonable if the Defendant:

1) [k]new or had reason to believe that the person or person[s] against whom deadly force was used was committing or attempting to commit aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery or aggravated robbery; AND

2) did not provoke the person against whom the deadly force was used; AND

3) was not otherwise engaged in criminal activity, other than a Class C misdemeanor that is violation of law or ordinance regulating traffic at the time the force was used.

The presumption applies unless the State proves beyond reasonable doubt that the facts giving rise to the presumption do not exist. If the State fails to prove beyond a reasonable doubt that the facts giving rise to the presumption do not exist, you must find that the presumed fact exists. Even though you may find that the presumed fact does not exist, the State must prove beyond a reasonable doubt each of the elements of the offense charged. If you have a reasonable doubt as to whether the presumed fact exists, the presumption appl[i]es and you must consider the presumed fact to exist.

However, the application paragraphs of the jury charge do not refer to deadly force or self-defense, providing, instead, only a simple application paragraph on the offense of capital murder:

6

Now bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that on or about the 29th day of November, 2022, in Potter County, Texas, the defendant, JOHN PAUL ORTEGA, did then and there, intentionally or knowingly cause the death of an individual, namely, ILIANA MICHELLE GARZA, by stabbing her with an object unknown to the Grand Jury, and did then and there, intentionally or knowingly cause the death of another individual, the unborn child of ILIANA MICHELLE GARZA by stabbing ILIANA MICHELLE GARZA with an object unknown to the Grand Jury in the same criminal transaction then you will find the Defendant guilty as charged in the indictment.

Unless you so find from the evidence beyond reasonable doubt, or if you have reasonable doubt thereof, you will acquit the defendant and say by your verdict, "Not Guilty".

No objection was made, and no additional charge was requested before the charge was delivered to the jury. Appellant complains that the trial court's charge to the jury was erroneous in that it failed to include self-defense instructions in the application paragraph of the jury charge.

**STANDARD OF REVIEW**

A jury-charge-claim analysis involves two steps: First, we determine whether the charge is erroneous. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022). If it is, then we must decide whether the appellant was harmed by the erroneous charge. *Id.* There are two standards of review for jury-charge-error claims. *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)). If a defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Id.* If there was not a timely objection, the record must show "egregious harm." *Id.* Harm is assessed "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of [the] probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* An

7

erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on "actual harm rather than theoretical harm." *Id.* (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one. *Id.*; *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). In our analysis, reviewing courts consider (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## ANALYSIS

The trial court's having included, seemingly sua sponte, concepts of self-defense in the abstract portion of the jury charge signaled that self-defense was "the law applicable to the case." *State v. Barrera*, 982 S.W.2d 415, 416 (Tex. Crim. App. 1998) (en banc) (quoting TEX. CODE CRIM. PROC. art. 36.19). That being so, any flaw in the jury charge on self-defense amounts to an error in the charge. *Id.* This is so because, if an issue is "law applicable to the case," "[t]he jury must be instructed 'under what circumstances they should convict, or under what circumstances they should acquit.'" *Mendez v. State*, 545 S.W.3d 548, 553 (Tex. Crim. App. 2018) (quoting *Gray v. State*, 152 S.W.3d 125, 127–28 (Tex. Crim. App. 2004)). We conclude that the trial court's charge to the jury was erroneous for that reason. Because there was no timely objection to the error, we review the error for egregious harm.

## The Jury Charge as a Whole

The abstract portion of the jury charge provides a thorough and accurate explanation of the relevant concepts associated with the use of deadly force in self-defense. The jury charge also included instructions for considering the evidence in light of the presumption of innocence and guilt beyond a reasonable doubt. We consider the fact that the jury charge does give thorough explanation of these concepts, even specifically outlining the application of the presumption of reasonableness. That being so, "[t]here is nothing in the record indicating the jury was misinformed or uninformed on the law of self-defense." *Linden v. State*, 347 S.W.3d 819, 823 (Tex. App.—Corpus Christi 2011, pet. ref'd). Nonetheless, the jury charge failed to include instructions delineating the circumstances upon which the jury could have acquitted Appellant. We treat this consideration as weighing slightly in favor of finding harm.

## The State of the Evidence

We note that the record reveals that Appellant's initial account of the altercation omitted any mention of the exchange that underlies Appellant's assertion of self-defense. In a subsequent interview with police, he denied ever even having stabbed Garza, denied that she died at all. Finally, at trial, his account of the altercation in which he employed deadly force in self-defense was rather tenuous and stood in stark contrast to his earlier accounts.

At trial, Appellant described that when he entered Garza's vehicle, he noticed that Garza had something; he did not know what it was:

9

> We were talking and she had her hands – her arms crossed. I seen something in her hand, but I didn't know what it was. She kept looking in her rearview mirror. I tried to get out of the car, but she told me to stay in, so I shut the door. She looked again and in her rear-view mirror. So I leaned forward to look in the mirror on the door and I'm watching her from the side and she swings at me. And I move and I grab her arm and I take the weapon out of her hand. She's reaching for something with her left by the door in her seat, thinking she was reaching for a gun. So I wasn't trying to get shot, so I opened up the door, but at the same time, as I ran out, I swung at her.

Even were the jury to believe that Garza did first have the sharp object, by Appellant's own testimony, he had managed to disarm Garza of the object and had initiated his exit from Garza's vehicle. As he was getting out, he testified, he "swung at her," inflicting a deep and fatal wound in Garza's neck. While he added that he thought he saw her reaching for some other object to her left, he never identified the item or confirmed that there was an item in that location, and nothing indicates Garza was able to retrieve any other weapon. A search yielded no other weapon in Garza's vehicle. At the moment Appellant stabbed Garza, there was no evidence that Garza posed a danger to Appellant and no evidence of Garza's having possession of a weapon of any kind. Self-defense is implausible even with Appellant's newest and very different account of the interaction.

Because the evidence, taken at its most favorable to Appellant, fails to raise a plausible scenario in which Appellant was justified in stabbing Garza, the trial court's error in including the defense in the abstract portion of the jury charge but omitting it from the application paragraph did not cause egregious harm.

The Texas Court of Criminal Appeals examined a similar assertion of self-defense when it was inconsistent with both the appellant's prior statements to police and with the physical evidence. *See Villareal*, 453 S.W.3d at 436–40. In *Villareal*, as in the case at

10

bar, even taking the appellant's version as true, the account of the altercation could not have raised the presumption of reasonableness because at the time of the stabbing, the appellant—by his own account and inconsistent with all witness statements that the victim was unarmed—had disarmed the victim and taken his weapon from him. *See id.* at 439. Consequently, the *Villareal* court determined that the record showed that, "by the time of the stabbing, appellant had no 'reason to believe' that [the stabbing victim] was attempting to murder him and, as such, the presumption was inapplicable." *Id.* at 440 (citing TEX. PENAL CODE § 9.32(b)(1)(C)).

Here it is exceedingly implausible, given the state of the evidence and Appellant's testimony, that it was necessary to use deadly force in self-defense, that the outcome of the trial would have been different had the jury charge included instructions on self-defense in the application paragraphs. The state of the evidence weighs heavily against the finding that the jury charge error caused egregious harm.

The Arguments of the Parties

Additionally, the defensive theory was one that really centered on credibility: did the jury believe Appellant's version of events? It was free to believe or disbelieve Appellant's version of events. *See Sorto v. State*, 173 S.W.3d 469, 475 (Tex. Crim. App. 2005). If it did not believe him, his assertion of self-defense would have failed. And, as we have noted, even if the jury *had* believed the version of events Appellant described for the first time in his trial testimony, it was still insufficient to show Appellant was justified in using deadly force in these circumstances. *See Villareal*, 453 S.W.3d at 440.

11

Additionally, although the jury charge did not contain an explicit instruction that it must acquit Appellant if it found he acted in self-defense, defense counsel argued that the jury should acquit Appellant based on self-defense, and the charge included instructions on the presumption of innocence and informed the jury that the State bore the burden of disproving self-defense beyond a reasonable doubt. After having examined the arguments of the parties, we conclude that Appellant was not egregiously harmed because the erroneous jury charge did not vitally affect his defensive theory. *See Alcoser*, 663 S.W.3d at 171.

We conclude that the record fails to demonstrate the jury charge error caused Appellant egregious harm. Consequently, we overrule Appellant's issue.

## CONCLUSION

Having overruled the issues Appellant has presented on appeal, we affirm the trial court's judgment of conviction.

Judy C. Parker
Chief Justice

Do not publish.

12